PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-8540

_____

D.C. Docket No.  1:95-CV-1551-ODE

WAYNE O. WITTER,

Plaintiff-Appellant,

versus

DELTA AIR LINES, INC.,
MICHAEL A. BERRY, et. al.

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 14, 1998)**

Before HATCHETT, Chief Judge, DUBINA and CARNES, Circuit Judges.

CARNES, Circuit Judge:

Wayne Witter, an airline pilot, sued his employer Delta Air Lines, Dr. Michael Berry, and Preventative & Aerospace Medical Consultants ("Medical Consultants") contending that they had violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Georgia tort law. The district court awarded the defendants summary judgment on all of Witter's claims and he appealed. For the reasons set forth below, we affirm the judgment of the district court.

## I. FACTS

Witter, a resident of the Atlanta metropolitan area, began working as a pilot for Delta Airlines in 1967. In February 1992, Witter was involved in a domestic dispute during which he threatened to commit suicide. As a result of that incident, he was hospitalized and underwent psychiatric evaluation. Witter voluntarily grounded himself because he believed he was not medically fit to fly. In June 1992, he saw a doctor in Atlanta who diagnosed him as suffering from bipolar disorder and found him unfit to fly. Relying on that report, a Federal Aviation Administration ("FAA") certified air medical examiner formally denied Witter FAA medical certification. Without FAA medical certification, he could not serve as a pilot for Delta.

In the fall of 1992, Witter began the process of regaining FAA medical certification. The FAA's chief psychiatrist, Dr. Barton Pakull, determined that while Witter had a "characterological problem that might be considered a personality disorder," he should be issued FAA medical certification. The recommendation came with the "limitation that Witter

2

submit semi-annual update psychiatric reports." Witter received his FAA medical certificate in February 1993, and he presented it to Delta on March 1, 1993.

Delta, however, decided that Witter should undergo further medical evaluation before being allowed to fly. On June 2, 1993, Delta had Witter examined by Dr. Michael Berry, who was associated with Medical Consultants. Dr. Berry also referred Witter to Drs. Faillace and McLaughlin. In July 1993, Dr. Berry reported the three's findings to Delta. His report concluded that Witter suffered from an Adjustment Disorder with Mixed Emotional Features, but that he did not have a psychiatric disorder at that time. However, the report noted that if "any future unusual behavior indicates the occurrence of another adjustment disorder, Captain Witter should be grounded permanently. Until then, he is qualified to fly." Based on Dr. Berry's report, Delta permitted Witter to return to his regular piloting duties in August 1993.

In November 1993, Witter flew a European rotation--a series of flights within a defined time period--with two junior crewmembers, First Officer Berlin and Second Officer Sweeney. Witter did not get along with his two crewmates during the rotation. It was so bad that all three crewmembers filed complaints with David Dollarhide, Delta's chief pilot at LaGuardia Airport. Upon the recommendation of Delta's chief pilot, Shand Gause, Dollarhide arranged for the flight crew to attend a Cockpit Resource Management ("CRM") session on February 14, 1994. A CRM is a meeting where crewmembers are brought together to discuss their communication and interpersonal skills. Following the CRM, Gause and Dollarhide met with Witter and told him that he was the center of the problem, that a

3

letter would be put in his file, and that he would get a line check after his next flight. A line check is an examination of a pilot's competency during the actual operation of the aircraft.

The day after the CRM, Gause and Wes Anderson, Delta's Systems Manager for Flight Administration, contacted Dr. Berry to discuss whether Witter's behavior in the November 1993 rotation was the type which Dr. Berry's July 1993 report said should lead to grounding. Dr. Berry and Dr. Faillace reviewed reports concerning Witter's November rotation and recommended that Witter be temporarily grounded pending further evaluation.

In March and April 1994, Dr. Berry and Dr. Faillace both interviewed Witter about the events of the November rotation. Witter told Dr. Berry that his crewmates ignored him and acted on their own, that they were difficult to work with because they were younger, and that he suspected that their placement on the crew was some kind of intentional plot against him. Dr. Berry also interviewed Witter's crewmates, Berlin and Sweeney who told him that during the rotation Witter would "get very angry with them and that they believed [Witter] was a danger in the cockpit." Based on his interview with Witter, Dr. Faillace concluded that "when Mr. Witter is under extreme stress, his basic underlying narcissistic personality flaws become apparent. He also has a significant affective component with some features of Cyclothymia.[1] When stressed, he exhibits significant symptoms of Narcissistic Personality Disorder." Dr. Berry also consulted Dr. McLaughlin, who concurred that Witter suffered from a Narcissistic Personality Disorder when he was under stress. Dr. Berry then prepared

---

[1]Cyclothymia is a mild bipolar disorder characterized by instability of mood and a tendency to swing between mild euphoria and depression.

a report in April 1994, which diagnosed Witter as suffering from Narcissistic Personality Disorder and possible Cyclothymia. Based on the report, Delta permanently grounded Witter in April 1994.

Beginning in March 1994, Dr. Berry, believing he had a duty to do so, kept the FAA appraised of the Witter situation. This included phone conversations with FAA doctors, sending them his July 1993 and April 1994 reports on Witter, and recommending to Dr. Pakull, the FAA's chief psychiatrist, that the FAA review Witter's medical certification. In June 1994, the FAA convened a panel of six psychiatrists to review Witter's case. The panel concluded that Witter should not be granted FAA medical certification because he was suffering from a personality disorder. In December 1994, Dr. Pakull agreed with the panel's finding. In February 1995, the FAA canceled Witter's medical certification. Witter appealed this decision to the National Transportation Safety Board ("NTSB"). After an administrative trial, the NTSB reversed the FAA action in a December 1995 opinion and restored Witter's FAA medical certification.

## II. PROCEDURAL HISTORY

In June 1995, Witter sued Delta, Dr. Berry, and Medical Consultants. His complaint asserted: (1) an ADA claim against Delta, contending Delta discriminated against him on the basis of a perceived disability by subjecting him to unnecessary testing, grounding him, and not offering a reasonable accommodation; (2) an ADEA claim against Delta; (3) a Georgia tort law claim against Delta for intentional infliction of emotional distress; (4) a Georgia tort law claim against Delta for negligent hiring and retention; (5) a Georgia tort law claim

5

against Delta and Dr. Berry for defamation; and (6) a Georgia tort law claim against Dr. Berry and Medical Consultants for tortious interference with contractual relations.

At the close of discovery, the district court awarded the defendants summary judgment on all of Witter's claims. Subsequently, Witter filed a motion to vacate the judgment and to recuse the district judge. The district court denied that motion as "wholly frivolous." Witter then appealed the award of summary judgment and the denial of the motion to vacate the judgment and for recusal.

### III. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same legal standard employed by the district court. See, e.g., Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993). "Summary judgment is appropriate if the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." White v. Mercury Marine, 129 F.3d 1428, 1430 (11th Cir. 1997) (internal citations and quotations omitted).

### IV. DISCUSSION

#### A. WITTER'S ADA CLAIM

In order to establish a prima facie violation of the ADA, Witter must prove that (1) he has a "disability"; (2) he is a "qualified" individual; and (3) he was discriminated against

because of his disability.  See Harris v. H&W Contracting Co., 102 F.3d 516, 519 (11ᵗʰ Cir.

1996).

### 1.  Whether Witter Has a Disability

"Disability" is defined as:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).  The sole basis upon which Witter rests his contention that he is

"disabled" is § 12102(2)(C).  Specifically, he argues that Delta perceived him as having a

mental impairment that substantially limited the major life activity of working.

The regulations implementing the ADA provide guidance on what a plaintiff must

show to demonstrate he is substantially limited in the major life activity of working.  With

respect to the major life activity of working, the term "substantially limits" is defined as:

> [S]ignificantly restricted in the ability to perform either a *class of jobs* or a *broad range of jobs* in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of "working."

29 C.F.R. § 1630.2(j)(3)(i) (emphasis added); see also Pritchard v. Southern Co. Servs., 92

F.3d 1130, 1133 (11ᵗʰ Cir. 1996) ("An impairment does not substantially limit the ability to

work merely because it prevents a person from performing either a particular specialized job

7

or a narrow range of jobs." (internal citations and quotations omitted)).   A "class of jobs" is defined as:

> The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment.

29 C.F.R. § 1630.2(j)(3)(ii)(B).  A "broad range of jobs in various classes" is defined as:

> The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment.

29 C.F.R. § 1630.2(j)(3)(ii)(C).  Therefore, to establish that he has a "disability" under the "regarded as" prong of § 12102(2), Witter must produce evidence showing that Delta regarded him as being significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes.

At oral argument, Witter conceded that he did not produce evidence showing that Delta regarded him as significantly restricted in the ability to perform a "broad range of jobs in various classes."  However, he contends that he satisfied his burden of showing that Delta regarded him as significantly restricted in the ability to perform a "class of jobs."  He argues he met that burden by presenting evidence that Delta perceived him as "unable" – the word Witter uses in his brief – to pilot airplanes for anybody.  We disagree.  Even accepting as true that Delta perceived Witter as unable to pilot airplanes because of mental or emotional problems, we conclude that piloting airplanes is too narrow a range of jobs to constitute a "class of jobs" as that term is defined in 29 C.F.R. § 1630.2(j)(3)(ii)(B).

8

A "class of jobs" consists of jobs in the geographic area in which the plaintiff resides that utilize "similar training, knowledge, skills or abilities." 29 C.F.R. § 1630.2(j)(3)(ii)(B). There are non-piloting jobs in the Atlanta area which utilize "similar training, knowledge, skills or abilities" as piloting jobs. Such jobs include pilot ground trainer, flight simulator trainer, flight instructor, aeronautical school instructor, as well as executive, management, and administrative positions in flight operations for airlines, and being a consultant for an aircraft manufacturer. Witter himself indicated that he was qualified for the non-piloting positions of airline management and flight training by virtue of being a "senior captain with 27 years of flight experience." In addition, we, like the district court, take judicial notice of the fact that Atlanta is home to Hartsfield Atlanta International Airport, one of the busiest airports in the country, and as a result, a number of such non-piloting jobs are available in Atlanta.

Therefore, to establish that Delta perceived him as unable to perform the relevant "class of jobs," Witter would have to prove Delta regarded him as unable to perform not just the job of being a pilot, but also the non-piloting jobs we have discussed. Because Witter failed to offer any evidence at all of that, we conclude that he failed to raise a genuine issue that Delta regarded him as significantly restricted in the major life activity of working.[2]

---

[2]We see no conflict between our decision and the actual holding of the Tenth Circuit in Sutton v. United Air Lines, Inc., 130 F.3d 893 (10th Cir. 1997). In that case, the plaintiffs were United Air Lines pilots who argued that United regarded them as substantially limited in the major life activity of working because they had a vision defect that prevented them from being global airline pilots. The court rejected the plaintiffs' argument on the ground that "global airline pilot" was "too narrow [a description] to constitute a 'class of jobs'"

Accordingly, because there was no genuine issue about his failure to come within the ADA's definition of "disabled," and the defendants were entitled to judgment as a matter of law on the ADA claim, we affirm the grant of summary judgment as to that claim.[3]

## B. WITTER'S OTHER CLAIMS

We affirm the award of summary judgment to the defendants on Witter's other claims for the reasons expressed in the district court's thorough and well-reasoned opinion. In addition, we affirm the district court's denial of Witter's motion to vacate the judgment and for recusal.

## III. CONCLUSION

AFFIRMED.

---

under § 29 C.F.R. § 1630.2(j)(3)(ii)(B). Id. at 905. Although the court did note that the class of jobs to which the plaintiffs should have compared themselves to was "that of all pilot positions at all airlines," that statement was dicta. Id. The Sutton Court did not address the issue we find dispositive, i.e., whether non-piloting jobs in the geographic market utilizing similar training, knowledge, skills or abilities as piloting jobs were within the relevant "class of jobs."

[3]Because we conclude that Witter does not have a disability for purposes of the ADA, we need not address whether Witter established the other elements of his ADA claim.

10