Frances D. PEEPLES, Plaintiff,

v.

**WRIGHT INVESTMENT PROPERTIES, INC., Hotel Management, Inc., Driving Force, L.L.C., Macon, GA Hotel Partners, L.P., and Stacey Perryman, Defendants.**

No. CIV.A. 5:97–CV–70–3.

United States District Court, M.D. Georgia, Macon Division.

Jan. 8, 1999.

Gerald Samuel Burnette, Macon, GA, for Frances D. Peeples, plaintiff.

Charles Herrick Morgan, Glenn G. Patton, Alston & Bird, Atlanta, GA, for Hotel Management, Inc., Wright Inv. Properties, Inc., Driving Force, L.L.C., Macon GA. Hotel Partners, L.P., Stacey Perryman, defendants.

## ORDER

LAWSON, District Judge.

Plaintiff has filed claims for violation of the Americans with Disabilities Act of 1990 ("ADA"), the Georgia Equal Employment for Persons with Disabilities Code ("GEEPDC") and intentional and negligent infliction of emotional distress. Before the Court is Defendants' Motion for Summary Judgment. For the reasons set forth herein, the Motion is **GRANTED** and the case **DISMISSED**.

### FACTS

Defendant Macon, Georgia Hotel Partners, L.P. ("HP") owns a Holiday Inn located off the I–475 bypass in Macon. Defendant Hotel Management, Inc. ("HMI") manages the day-to-day operations of the Holiday Inn. Defendant Driving Force L.L.C. is the General Partner of HP and Defendant Wright Investment Properties, Inc. is a real estate development company. Defendant Stacy Perryman was formerly employed by HP as General Manager of the Holiday Inn during the relevant time period.

HP purchased the Holiday Inn in January 1996 and invested a substantial amount in improving the property. HP also hired a new management team and offered employment to the remainder of the hotel staff. Plaintiff Frances Peeples ("Peeples"), who had been employed as lounge manager by the previous owner, was hired as a bartender, subject to her completing a 90–day evaluation period.

Peeples began having problems with her vision as early as 1991. Despite surgery, she continues to have blurriness and blind spots in her vision. In April 1996, her vision was measured at $^{20}\!/_{200}$ left eye and $^{20}\!/_{400}$ right eye, making her legally blind in Georgia. She has lost peripheral vision, has difficulty seeing 20 feet away and has blockage for part of her vision. In November 1995, she applied for Social Security Administration ("SSA") benefits, stating that her visual impairment rendered her so "disabled" she was "unable to work." She received disability benefits the entire time she worked for HP.

Prior to its acquisition by HP, the Holiday Inn operated without a formal alcohol management policy. One of the first things HP did after it acquired the property was implement such a policy, the goal of which was to help the hotel avoid dram shop liability. As part of this plan, bartenders (including Peeples) were responsible for ensuring that minors were not served or otherwise drinking in the lounge, that licenses and other forms of personal identification were authentic, and that persons who were obviously intoxicated were not served.

A few weeks after Peeples was hired General Manager Perryman, informed by others that Peeples was suspected of drinking on the job, questioned her about it. Peeples denied the accusations and took an alcohol test, which turned out negative. In a subsequent meeting about the incident, Perryman questioned Peeples about her watery eyes, at which point Peeples explained her vision problems. She explained that she knew the buttons on the cash register and the alcohol bottles only by memory and that she could see numbers on credit cards with a magnifying glass, although she had difficulty ensuring they were not transposed.

In a meeting the next day, Perryman expressed her concerns about Peeples' ability to administer the Alcohol Management Program and with whether the hotel's insurance company would allow a legally blind bartender to serve liquor. She told Peeples that she would move her to work in the dining room as a banquet server, a position she assured would provide at least the same base pay and tips. The parties disagree as to how what happened next transpired, but Peeples ultimately refused the transfer and was terminated.

### DISCUSSION

#### A. ADA claim

■ In order to establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must prove each of the following elements: (1) she has a "disability," (2) she was "qualified" for the position in question, and (3) she was discriminated against because of her disability. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998). The facts of this case show that Plaintiff cannot meet the second element because she was not qualified for the position.

### 1. Qualified Individual With a Disability

"The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires." 42 U.S.C. § 12111(8). The facts of this case, including Defendants' Alcohol Management Program ("AMP") and Plaintiff's own testimony, establish that Plaintiff was unable to perform the essential functions of her job and that no reasonable accommodation existed which would allow her to do so.

Plaintiff's $^{20}/_{200}$ left eye and $^{20}/_{400}$ right eye vision at the time of her employment made her legally blind in Georgia. In addition, there are parts of her vision where there is no line of sight, due to blockage from scar tissue. She also has difficulty seeing more than 20 feet away. Her impairment is permanent and cannot be corrected through the use of surgery or visual aids.

There is no dispute that proper administration of the AMP was an essential function of the job in question. In order to properly administer the AMP, bartenders were required to monitor the lounge, which is more than 50 feet long, to prevent obviously intoxicated persons from continuing to drink. In addition, they were required to protect against underage drinking, which includes detecting fraudulent driver's licenses, as well as monitoring the lounge to prevent minors from sharing drinks with of-age patrons. Because there was only one bartender per shift, that person was the sole individual charged with enforcing the AMP.

Plaintiff steadfastly maintains that she could perform the essential functions of the job as she had done under previous ownership. She points to testimony from a vocational expert, Debra Horton, who Plaintiff retained to assess her abilities in relation to certain job tasks found in a bar setting. Ms. Horton tested Plaintiff's ability to tend bar in a simulated work setting. The test, which was administered in the bar of a local Best Western, was based on a description of general requirements for bartenders taken from a Georgia Department of Labor Handbook and included Plaintiff performing tasks such as setting up the bar, mixing drinks, making change, and reading birth dates on drivers' licenses. Ms. Horton reached her conclusions based on her observations while administering the tests, an interview with Ms. Peeples about her performance and her separation notice. Ms. Horton's assessment found that Plaintiff did not demonstrate a significant risk. However, a close review of Ms. Horton's report and subsequent deposition reveals little evidence of any relevance, so far as this case is concerned. Significantly, Ms. Horton never reviewed the hotel's AMP. As a result, her tests and subsequent opinion did not include any analysis of Ms. Peeples' ability to perform certain tasks Defendants felt were essential to the job, e.g., detecting the level of intoxication of bar patrons, checking for *fake* drivers' licenses, and insuring that minors were not surreptitiously sharing drinks with of-age patrons (all of which necessarily involve subtle visual inspection). There is nothing in the record to suggest Ms. Peeples could adequately perform any of these tasks at the Holiday Inn bar (which appears to have been significantly larger than the Best Western bar at which Plaintiff was tested), nor is there anything to suggest that these tasks were not essential functions of the bartender position.

Perhaps most importantly, Ms. Peeples is not entitled to define the essential functions of the job. Simply because prior ownership may have had a less strict description of the essential functions of the job does not mean Defendants in this case were required to define the job in the same manner. It is also of no consequence that Ms. Peeples felt she could perform these tasks by providing her own reasonable accommodation- magnifying glass. While this may have improved her near visual acuity for performing such tasks as reading the dates on licenses and the labels on liquor bottles, the Court can imagine no circumstance—and Ms. Peeples has suggested none- which this would assist her in performing the previously listed distance vision related tasks for which she was never tested by Ms. Horton. Ms. Peeples has also not suggested any other accommodation that would allow her to perform those job functions. This is because no such accommodation exists for correcting Ms. Peeples' permanent disability. While the Court

is sympathetic to the plight of Ms. Peeples, the fact is that she is not qualified to perform the essential functions of the job, as defined by Defendants. Her ADA claim must therefore be **DISMISSED**, as well as her GEEPDC and emotional distress claims, which were proper before the Court only as pendant claims. Summary judgment is therefore **GRANTED** to Defendants.