**Robert C. WILSON, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS AND WAREHOUSEMEN, et al., Defendants.**

**Civil Action No. 97–0806 (JR).**

United States District Court, District of Columbia.

March 17, 1999.

Richard H. Semsker, Shannon Salb, Lippman and Associates, Washington, DC, for plaintiff.

Steven K. Hoffman, James & Hoffman, P.C., Washington, DC, Betty Grdina, Associate General Counsel, International Brotherhood of Teamsters, Legal Department, Washington, DC, Joseph J. Pass, Jubeliere, Pass & Intrieri, P.C., Pittsburgh, PA, for defendants.

### MEMORANDUM

ROBERTSON, District Judge.

Robert Wilson alleges that he was fired from his job as Executive Assistant to Tom Sever, General Secretary–Treasurer of the International Brotherhood of Teamster's, Chauffeurs and Warehousemen ("Teamsters"), because Sever thought Wilson was an alcoholic. Wilson sued Sever and the Teamsters for employment discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq. He also asserts state law claims for tortious interference with a prospective contractual relationship and for intentional infliction of emotional distress. Defendants have moved for summary judgment. For the reasons stated below, defendants' motion will be granted as to the ADA claim, and the state law claims will be dismissed.

*Facts*

In 1992, after his election to a five-year term as General Secretary–Treasurer ("GST") of the Teamsters, Sever hired Wilson to be his Executive Assistant. Wilson was already a Teamsters employee and understood that as Sever's Executive Assistant he would be an at-will employee and that his employment terms would be completely determined by defendant: under the Teamsters' International Constitution, Sever could hire and fire whomever he pleased. Wilson's responsibilities, like the terms of his employment, were never reduced to writing. They included drafting official reports for Sever, acting as liaison between Sever's office and the office of the Teamsters' General President, and driving Sever to and from Sever's Pittsburgh home on weekends. Wilson also routinely drove or accompanied Sever on out of town business trips, upon Sever's request. Wilson's and Sever's employment relationship appears to have been informal in many respects, for, in addition to routinely dining and drinking alcohol together after working hours, the two shared an apartment during the work week.

Sever was aware of Wilson's drinking problem long before he hired him. He knew that there had been several occasions on which Wilson drank to excess, and he knew that sometimes Wilson got into trouble as a result. Mot.Summ.J., Sever Decl. at 1 ¶ 4. In 1985, after Wilson was arrested for driving under the influence of alcohol in Pennsylvania, Sever helped him find a lawyer and testified on Wilson's behalf. In 1992 or 1993, while driving a Teamsters vehicle in Washington, D.C., Wilson was arrested for driving while under the influence of alcohol. The Teamsters car was impounded and Wilson was required, upon conviction, to attend an alcohol treatment program at ETHOS in Falls Church, Virginia. In November 1994, Wilson was once again charged with drunk driving in Washington, D.C., this time after crashing a Teamsters vehicle.

After his conviction on this occasion, Wilson began attending Living Free, an outpatient addiction treatment center in Virginia. Wilson's treatment at Living Free began in January 1995 and required that he remain abstinent, attend meetings twice a week, and submit urine samples weekly. Sever maintains that he learned of Wilson's involvement in this treatment program only after he fired him, Reply, Sever Depos. at 47.

On June 14, 1995, Wilson suffered a relapse. He and Sever got into an argument after drinking together. Wilson left with Sever's car and continued to drink to the point of intoxication. The Teamsters car and Wilson were reported missing. The next day, the union's Director of Security found Wilson in Crystal City, drinking in a bar.

Notwithstanding these and other alcohol-related incidents, Sever neither disciplined Wilson, Mot. Summ. J., Statement of Material Facts at 8 ¶ 66, nor documented any of Wilson's misconduct, until September 6, 1995, when Sever prepared a memorandum for that purpose. Sever Decl., Ex. A. The events leading up to that memorandum are pivotal to Wilson's claim and defendants' motion.

On August 19, 1995, Wilson accompanied Sever to an official Teamsters seminar in Chicago. They were scheduled to return on August 20, 1995. On the morning of August 20, Sever called Wilson's room to arrange to leave for the airport. There was no answer. Sever knocked on Wilson's door, and still there was no response. Sever then gained entrance with the assistance of hotel staff and found Wilson asleep. Sever woke Wilson and demanded that he leave with him to catch the flight to Pittsburgh. Wilson refused, and Sever fired him on the spot Sever did not suspect or have reason to know that Wilson was intoxicated, and Wilson denies that he had been drinking alcohol the night before or that morning.

After he was fired, Wilson did not speak with Sever for a week. On August 28, 1995, Sever offered to rehire Wilson if he would undergo alcohol treatment and testing. Instead of accepting that offer, Wilson told Sever that he was trying to get a job in the General President's office. Sever grew angry and told Wilson that he had one week to decide. The next day, Sever called Wilson and told him that he had decided not to rehire him When Wilson again indicated his intention to work for the General President, Sever told Wilson, "Don't think you're going to go around me." Def.'s Statement of Material Facts at 12 ¶ 109.

On September 6, 1995, Sever asked Wilson once again to consider working for him. Wilson neither accepted nor asked Sever to rehire him. That same day, Sever prepared a confidential memorandum detailing numerous verbal warnings about insubordination that he had given Wilson during the past three years. Sever Decl., Ex. A at 1. Although most of the misconduct mentioned in the memorandum was related to Wilson's drinking, the memorandum does not expressly mention Wilson's alcoholism or suggest that any of the listed misconduct was alcohol-related.

On September 18, 1995, Sever informed Wilson that he had hired a replacement and directed Wilson to remove his possessions from the apartment they had shared in Virginia. Sever and Wilson have not spoken since. In response to suggestions by those trying to help Wilson obtain a job with the General President, Wilson participated in an alcohol treatment program at Gateway Greenway, in Pittsburgh, from September 20, 1995 until October 26, 1997.

On October 31, 1995, Sever sent Wilson a formal termination letter that made Wilson's termination retroactive to August 28, 1995. Wilson was subsequently offered another job with the Teamsters but refused it because it would not include backpay. He filed this action on April 22, 1997.

## Analysis

To establish a prima facie case of discrimination under the ADA, a plaintiff must prove: (1) that he had, or was regarded as having, a disability; (2) that he was otherwise qualified for the position from which he was fired; and (3) that an adverse employment action was taken against him because of his disability. *See, e.g., Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366, 1369 (11th Cir.1998); *Adamczyk v. Chief, Baltimore County Police Dept.,* 952 F.Supp. 259, 263 (D.Md.1997). Wilson's case founders on the first element.

■ The required analysis of the "disability" element has three steps. *See Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998). The first step is to determine whether the plaintiff has or is regarded as having an "impairment." The second step is to identify the "life activity" upon which the plaintiff relies and determine whether it is a "major life activity" under the ADA. The third step is to determine "whether the impairment substantially limited the major life activity." *Id.*

Wilson does not claim that he has an "actual" disability, *see* Pl.Oppos. to Mot. Summ.J. at 4–5, but rather that his employer regarded him as having a disability. 29 C.F.R. § 1630.2(1); *Burch v. Coca–Cola Co.,* 119 F.3d 305, 322 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998). Unquestionably, Sever regarded Wilson as an alcoholic. Alcoholism is not, however, a disability per se. *Burch,* 119 F.3d at 316; *McKey v. Occidental Chem. Corp.,* 956 F.Supp. 1313, 1317 (S.D.Tex.1997). *Cf. Deas v. River West, L.P.,* 152 F.3d 471, 479 (5th Cir. 1998) (suffering from epileptic seizures not per se disability).

A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of [an]

individual." 42 U.S.C. § 12102(2)(A).[1] "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. § 1630(j). *Cf. Bragdon*, 118 S.Ct. at 2206–07 (declining to decide whether HIV infection constitutes a per se disability and instead requiring an individualized inquiry). Wilson's burden is thus to demonstrate that Sever regarded him as being substantially limited in a major life activity. 29 C.F.R. § 1630.2(j); *Witter*, 138 F.3d at 1369. In this case, of course, the major life activity that might be implicated by Wilson's "impairment" is working. 29 C.F.R. § 1630.2(j)(3); *Witter*, 138 F.3d at 1369–70.

■ The instant motion for summary judgment asserts that Wilson cannot sustain his burden. In the face of that challenge, Wilson had the burden of producing some evidence which could sustain his burden of proof at trial. *Paquin v. Federal National Mortgage Assoc.*, 119 F.3d 23, 27–28 (D.C.Cir.1997) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial.") (quoting *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).[2] Wilson has neither adduced evidence on the point nor identified anything in the record to establish that he was regarded, either by Sever or by the Teamsters, as substantially limited in any major life activity, including work. Wilson does argue, Pl.Oppos. to Def.'s Mot. for Summ. J. at 6–9, that Sever's verbal abuse after he found Alcoholics Anonymous literature in Wilson's bedroom and on the morning he fired Wilson "demonstrates that Sever believed that Plaintiff was unable to work because he was an alcoholic," *id.* at 8, but the argument is an attempt to drive the square peg of Wilson's evidence into the round hole of the applicable test. The verbal abuse may demonstrate Sever's bias against alcoholics in general, but it says nothing about Sever's beliefs concerning Wilson's ability to work. Indeed, to the extent that the record contains any evidence at all about what work Sever thought Wilson could do, it tends to show that Sever considered Wilson's ability to work—even to be his chauffeur—unimpaired.[3]

Wilson's failure to sustain his burden as to an essential element of his prima facie case requires that the defense motion for summary judgment as to his ADA claim be granted. That disposition makes it unnecessary to address a number of other issues

1. It seems clear that alcoholism is an "impairment", especially in light of the requirement that the ADA "be construed to be consistent with regulations used to implement the Rehabilitation Act," *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 2205, 141 L.Ed.2d 540 (1998). *See, Whitlock v. Donovan*, 598 F.Supp. 126, 129 (D.D.C.1984) (citing *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1228, 1231 n. 8 (7th Cir.1980)).

2. A very recent decision of the Tenth Circuit suggests that a plaintiff may "wait [ ] until trial to prove with particularity the impairment and major life activity he or she asserts are at issue." *Poindexter v. Atchison, Topeka & Santa Fe Railway Co.*, 168 F.3d 1228, 1231 (10th Cir.1999) While that may be correct in a case, like *Poindexter*, that proceeds to trial, a

plaintiff may not avoid the showing mandated by Rule 56(c) when the disability element is squarely challenged, as it has been here, in a motion for summary judgment.

3. Even if the record warranted the opposite conclusion, Wilson's duties as Executive Assistant were "too narrow a range of jobs to constitute a 'class of jobs' as that term is defined in 29 C.F.R. § 1630.2(j)(3)(ii)(B)," *Witter*, 138 F.3d at 1370, because the "class of jobs" open to Wilson included those jobs that he might have performed for the Teamsters, his ultimate employer, and not solely those he performed for Sever, an agent of the Teamsters. 42 U.S.C. § 1211(5)(A). *Cf. Amariglio v. National Railroad Passenger Corp.*, 941 F.Supp. 173, 178 (D.D.C.1996) (citing U.S. E.E.O.C. v.*AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281–82 (7th Cir.1995)).

raised by this motion: whether the actual cause of Wilson's termination was alcoholism, or misconduct, or both; what the standard of causation should be in an ADA firing case, *see,* John L. Flynn, *Mixed–Motive Causation Under the ADA; Linked Statutes, Fuzzy Thinking, and Clear Statements,* 83 Georgetown L.J.2009 (1995); or what effect, if any, should be given to the revelation that Wilson secretly taped telephone conversations with union officials after he was fired.

Wilson invokes this Court's discretionary power to assert supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367. Complaint at ¶ 4. Having disposed of the only claim over which the Court has original jurisdiction, however, I decline to assert supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *Orange v. District of Columbia,* 59 F.3d 1267, 1275 (D.C.Cir.1995) (quoting *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed as well.").

An appropriate order accompanies this memorandum.

### *ORDER*

Upon consideration of the defendant's motion for summary judgment [# 14], plaintiff's response thereto, and the full record, it is this 17th day of March, 1999, for the reasons set forth in the accompanying memorandum,

**ORDERED** that summary judgment is granted for the defendant as to Count I. And it is

**FURTHER ORDERED** that Counts II, III, and IV are dismissed.