[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14265

_____

RAFIQUL A. BHUIYAN,

Plaintiff-Appellant,

*versus*

PNC BANK, NATIONAL ASSOCIATION,

Defendant-Appellee,

JULIE STOLZ, et al.,

Defendants.

—————————————

Appeal from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:16-cv-03421-ODE

—————————————

Before WILLIAM PRYOR, Chief Judge, LAGOA, Circuit Judge, and SCHLESINGER,[*] District Judge.

LAGOA, Circuit Judge:

Rafiqul Bhuiyan appeals the district court's order granting summary judgment in favor of PNC Bank, National Association, on Bhuiyan's employment discrimination claims alleging failure to accommodate his religious belief, religious discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. After reviewing the record and with the benefit of oral argument, we affirm the district court's judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Bhuiyan, a practicing Muslim, worked as a financial service representative for Flagstar Bank in Atlanta. In 2011, PNC

—————————————

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

acquired Flagstar Bank and retained Bhuiyan, reclassifying him as a customer service associate.

Bhuiyan claimed that he was subjected to discrimination and harassment based on his religious beliefs through derogatory comments made by a coworker, Connie Best, beginning in 2011. On two occasions, in 2013 and 2014, Bhuiyan complained that Best made rude, derogatory, and mocking comments about his Muslim faith. The complaints were forwarded to PNC's employee relations department ("Employee Relations"), which closed the cases as unfounded after investigating the claims.

Because he believed that the issue with Best was not going to improve, Bhuiyan sought to be transferred to a different PNC branch. An Employee Relations representative explained the procedures for a transfer—which required Bhuiyan to apply to an open job listing at another branch—but he failed to follow those procedures. As a result, Bhuiyan was never transferred and remained employed at his original branch.

In June 2014, Bhuiyan requested time off for every Friday in July for Ramadan. By the time he made the request, however, the branch manager, Angela May, had already finalized the July schedule. Because of the religious nature of the request, May reached out to her regional manager, who in turn reached out to Employee Relations for assistance. The Employee Relations specialist assigned to the request recommended that Bhuiyan's request be granted. PNC ultimately granted Bhuiyan's request for time off on every Friday in July except the last Friday—July 25. The request

for the final Friday was denied because two employees were already scheduled to be off, and there was no outside availability to cover that day.

On July 9, 2014, Bhuiyan's coworker, Lynne Mashore, was working with a customer who expressed interest in opening a credit card with PNC. After speaking with the customer, Mashore spoke with Bhuiyan and their supervisor, Alison Persaud, about the transaction. The next day, Mashore noticed that Bhuiyan had entered into PNC's system a referral for a credit card, as well as a second referral for a savings account. Mashore complained to May that Bhuiyan had falsely claimed those referrals as his own, which violated PNC's code of conduct. May reported the incident to Employee Relations, and a case was opened to investigate the claim.

After Employee Relations began its investigation into Bhuiyan, he raised several complaints against his superiors and coworkers, including (1) a complaint against Best and Mashore alleging that they engaged in "embarrassing" and "unprofessional" conduct in front of a customer; (2) a complaint against May alleging discrimination based on his age, race, and religion; and (3) a complaint against Persaud alleging that she falsified internal records. Employee Relations opened an investigation into each of Bhuiyan's claims.

On July 21, 2014, while the investigations were pending, Bhuiyan asked May for a "personal day" on July 28, so he could celebrate Eid al-Fitr ("Eid") with his family. May again contacted Employee Relations about the request because there were staffing

issues that prevented her from permitting Bhuiyan to have that day off.  Employee Relations agreed that PNC could not accommodate this request but counseled May to inquire as to whether the request was a "religious requirement" and to offer Bhuiyan the day off later in the week.  May informed Bhuiyan that, due to staffing issues, PNC could not accommodate his request, but offered him a different day off and advised him that if the request was "a religious requirement," he should let her know so that PNC could re-evaluate the request.  Bhuiyan replied that Eid was "indeed a [r]eligious day like [C]hristmas," and that it was "sad news for [him] that one day out of a year [he could not] have that precious moment."  Bhuiyan came to work on both July 25 and 28 without further comment.

As part of the pending investigations, an Employee Relations specialist interviewed Bhuiyan twice.  During the first interview, a second Employee Relations specialist was present as a witness, and the questioning related mainly to Bhuiyan's discrimination claims against May.  Bhuiyan made several inconsistent statements, which led the Employee Relations specialist to believe that Bhuiyan was being dishonest.  The second interview was conducted with both the Employee Relations specialist and PNC's regional manager as witnesses, and focused on Mashore's claim that Bhuiyan had filed false referrals for the credit card and savings account.  During the second interview, Bhuiyan claimed that the same customer had returned to complete a separate transaction, this time with him, and expressed an interest in opening a credit card.  Bhuiyan further stated that even though the customer had

not expressed any interest in a savings account or other services, he marked all products and services on the referral form, which he indicated was his general practice. Bhuiyan later testified that, after the customer returned, he had a conversation with her about opening a savings account for her child, not a credit card, and that the only referral he made was for that savings account. At his deposition, Bhuiyan could not explain why there was a referral made by him in PNC's system for a credit card for that customer.

Following the two interviews, the Employee Relations specialist believed Bhuiyan had been untruthful during the investigation and interviews and placed him on paid administrative leave. While on leave, Bhuiyan sent a letter to PNC claiming that he was being retaliated against for raising a complaint against May and for accusing Mashore of accepting a gift card from a customer. This retaliation claim was investigated by Employee Relations and subsequently closed as unfounded. Employee Relations then recommended that PNC terminate Bhuiyan based on the false referrals he filed and the false and inconsistent statements he provided during the investigation—both of which violated PNC's code of conduct. On August 29, 2014, PNC's regional manager followed that recommendation and terminated Bhuiyan's employment at PNC.

On September 24, 2014, Bhuiyan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and alleged that PNC had retaliated and discriminated against him on the basis of his race, national origin, and religion in violation of Title VII, as well as his age in violation of the Age

19-14265                Opinion of the Court                7

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq. On June 17, 2016, the EEOC issued Bhuiyan a notice of his right to sue.

On September 12, 2016, Bhuiyan sued PNC and various employees. Following the dismissal of the employees, Bhuiyan amended his complaint against PNC to allege national origin and religious discrimination, failure-to-accommodate, and retaliation claims under Title VII.[1] After discovery, PNC moved for summary judgment on all claims. The motion was referred to the magistrate judge, who recommended that summary judgment be granted to PNC on all of the claims.

Bhuiyan filed several objections to the report and recommendation, arguing that (1) the magistrate judge employed an incorrect legal standard for Title VII claims; (2) PNC failed to carry its burden of proving undue hardship under his failure-to-accommodate claim; (3) the magistrate judge improperly weighed the evidence in favor of the moving party and made impermissible credibility determinations; and (4) the magistrate judge disregarded the "convincing mosaic model" of proof. The district court overruled each of Bhuiyan's objections, adopted the report and recommendation in full, and entered judgment for PNC on all of the claims.

---

[1] In amending his complaint, Bhuiyan withdrew claims he originally asserted under the ADEA and 42 U.S.C. § 1981.

Bhuiyan timely appealed.

## II.    STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1245 (11th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1325–26 (11th Cir. 2005) (quoting *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998)).

## III.    ANALYSIS

On appeal, Bhuiyan argues that the district court erred in granting summary judgment in favor of PNC on his religious-based Title VII claims of failure to accommodate, discrimination, and retaliation. We address his claims in turn.

### A.  Failure-to-Accommodate Claim

Bhuiyan argues that PNC failed to accommodate his religious beliefs when it denied his request to have July 25 off for Ramadan and July 28 off for Eid, and that the district court therefore erred in granting summary judgment in favor of PNC.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] religion." 42 U.S.C.A. § 2000e-2(a)(1); *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1293 (11th Cir. 2012) ("Title VII makes it unlawful for an employer to discharge an employee on the basis of the employee's religion"), *abrogated on other grounds by EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). And "[a]n employer has a 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'" *Walden*, 669 F.3d at 1293 (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)); *see also* 42 U.S.C. § 2000e(j) (defining "religion" in the Title VII context to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business"). "In religious accommodation cases, we apply a burden-shifting framework akin to that articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)." *Walden*, 669 F.3d at 1293. Under this framework, the plaintiff first must establish a *prima facie* case of discrimination based on the failure to accommodate his religious beliefs. *Id.* If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate that it either offered the employee a reasonable accommodation or could not do so without undue hardship.

*Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021).

The traditional test to establish a *prima facie* case required the plaintiff to show that he (1) "had a bona fide religious belief that conflicted with an employment requirement"; (2) informed his employer of that belief; and (3) was disciplined or discharged for failing to comply with the conflicting employment requirement. *Walden*, 669 F.3d at 1293. Bhuiyan, however, argues that the Supreme Court's decision in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), altered the framework for religious accommodation cases. He asserts that religious failure-to-accommodate claims no longer require actual knowledge—eliminating the second element. He further asserts that the third element can be satisfied by showing that the employee had to make the choice between compromising his faith and risking unemployment.

We first note that, following appellate briefing in this case, this Court issued its decision in *Bailey*, 992 F.3d 1265. In *Bailey*, this Court held that:

> [t]o establish a reasonable-accommodation claim of religious disparate treatment, a plaintiff must first set forth a prima facie case by showing that (1) his sincere and bona fide religious belief conflicted with an employment requirement, and (2) his employer took adverse employment action against him because of his inability to comply with the employment requirement or because of the employer's perceived need for his reasonable accommodation.

19-14265                Opinion of the Court                11

*Id.* at 1275. In discussing the framework for religious reasonable-accommodation claims, we explained that the Supreme Court's decision in *Abercrombie* "clarified that an employer need not have 'actual knowledge' of . . . an employee's need for accommodation if the employee can show that his need for an accommodation was a *motivating factor* in the employer's adverse employment action." *Id.* at 1275 n.4 (emphasis added) (quoting *Abercrombie*, 575 U.S. at 772). Thus, Bhuiyan correctly argues that the second element of the traditional test for establishing a *prima facie* case for a reasonable accommodation claim is no longer required. However, in deciding *Bailey*, we did not alter the first and third elements. And we reject Bhuiyan's request to alter the third element as he proposes.

Here, the district court applied the traditional test and held that Bhuiyan failed to establish a *prima facie* case for a failure-to-accommodate religious discrimination claim because he could not meet the first and third elements—i.e., he did not have a bona fide religious belief that conflicted with his ability to work on July 25 and 28, and he was neither disciplined nor discharged for failing to comply with PNC's requirement that he come to work on those days.

We affirm because Bhuiyan cannot meet his burden on the third element, which requires the employee to show that an employer took an adverse employment action against the employee either because of his inability to comply with an employment requirement that conflicted with his bona fide religious belief or because of the employer's perceived need for his reasonable

accommodation. *See id.* at 1275. To establish an adverse employ-ment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Da-vis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (em-phasis in original), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Whether the action is serious and material is not subjective; rather, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

The record evidence shows that Bhuiyan willingly came into work on both July 25 and 28 and was not disciplined in any way. Bhuiyan makes no claim that he was threatened with discipline or that his termination was associated with his requests to take time off for Ramadan and Eid. We therefore conclude that Bhuiyan failed to establish the third prong of his failure-to-accommodate claim and affirm the district court's grant of summary judgment in favor of PNC on this claim.[2]

### B. Religious-Based Discrimination and Retaliation Claims

As to his religious-based discrimination and retaliation claims, Bhuiyan argues that the district court erred in determining that PNC's rationale for firing him was not pretextual. For discrim-ination and retaliation claims, absent direct evidence, we apply the

---

[2] Because Bhuiyan failed to establish a *prima facie* case as to his failure-to-ac-commodate claim, the inquiry ends, we need not proceed to the second step of the burden-shifting framework.

same burden-shifting framework articulated in *McDonnell Douglas.* *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015); *Bailey*, 992 F.3d at 1277. If a plaintiff establishes a *prima facie* case of religious-based discrimination or retaliation, the employer must then articulate a legitimate, nondiscriminatory, or nonretaliatory reason for the challenged employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer provides such an explanation, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's explanation is merely a pretext for discrimination or retaliatory conduct. *Id.* The plaintiff must rebut the explanation by showing both that the reason was false *and* that discrimination or retaliation was the real reason for the challenged employment action. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

The district court declined to analyze whether Bhuiyan established a *prima facie* case as to his religious-based discrimination and retaliation claims and instead determined that his claims failed because he was not able to show that PNC's legitimate, nondiscriminatory reason for terminating him—i.e., that he had been dishonest and filed false referrals—was merely pretext for discrimination. We, too, will only discuss whether PNC's stated reason for terminating Bhuiyan's employment is merely pretextual. *See USPS Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether

the plaintiff really did so is no longer relevant."); *see also Pennington*, 261 F.3d at 1266 (assuming *arguendo* that the plaintiff established a *prima facie* case, because the court found the defendants' "legitimate reasons for the decision [were] dispositive").

Bhuiyan failed to present evidence rebutting PNC's stated legitimate reason for his termination. Although Bhuiyan disputes that he submitted a false referral, he offers no evidence to call into question PNC's belief that a false referral occurred. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (finding that an employee failed to show pretext where he presented evidence suggesting that allegations were untrue, but failed to present evidence suggesting that employer's belief in those allegations was unworthy of credence); *see also Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) ("[Plaintiff] disputes whether the incidents of unprofessionalism upon which [defendant] claimed to rely actually occurred. Admittedly, this would fail to demonstrate pretext if [plaintiff] only disputed that the incidents occurred, without calling into question [defendant's] sincere belief that they occurred.").

Bhuiyan argues that the customer in question came in the following day to speak with him and that the referral he submitted was based on this conversation. Such a claim does raise a question of fact about whether the referral was in fact false. But that alone is insufficient to meet the summary judgment standard; Bhuiyan must also offer evidence to show that PNC's justification is "unworthy of credence." *Elrod*, 939 F.2d at 1471. PNC is permitted,

based on its code of conduct and guidelines, to terminate an employee it *believes* to have submitted a false referral. And, based on the record evidence, PNC has done so on multiple occasions, as it did here, after conducting an Employee Relations investigation that resulted in a finding of dishonest conduct.

In this case, after PNC's Employee Relations specialist conducted an investigation, including interviewing Bhuiyan and his coworkers, she believed that Bhuiyan engaged in dishonest conduct and recommended that Bhuiyan be terminated. During the investigation, PNC discovered (1) that its internal server had a referral for the customer made by Bhuiyan for a credit card and savings account dated the day after that customer came in and spoke with Mashore; (2) that Bhuiyan made inconsistent statements about the referral; and (3) that Bhuiyan's coworkers' statements matched those raised by Mashore in her complaint that Bhuiyan had stolen her referral. PNC can be mistaken in its belief about the false nature of Bhuiyan's referrals, so long as that asserted belief is not a pretext for impermissible action. Here, even assuming that the allegations at issue are actually untrue, Bhuiyan failed to present any evidence that PNC's asserted belief in those allegations, which was based on the evidence it collected during its investigation, was unworthy of credence. Bhuiyan's religious discrimination and retaliation claims therefore fail because he cannot show that PNC's stated reason for firing him was pretext for either religious discrimination or retaliatory conduct.

Bhuiyan further argues that even if his discrimination claim fails under the traditional *McDonnell Douglas* framework, he has created "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by [PNC]." *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (footnote omitted) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016)). But, as discussed above, the mosaic that Bhuiyan attempts to piece together is insufficient to survive summary judgment. *Cf. Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1337 (11th Cir. 2015) (listing the evidence presented by a plaintiff that failed to establish a "convincing mosaic of circumstantial evidence" to survive summary judgment). The only claims that touched on Bhuiyan's religion were his own statements that a coworker made derogatory and unprofessional comments about his Muslim faith and that May discriminated against him based on his religion—claims that PNC fully investigated and determined to be unfounded. Although PNC's internal investigation is not legally dispositive to our inquiry, these claims standing alone, coupled with the fact that neither his coworker nor May had any decision-making authority over Bhuiyan's employment, do not support an inference of religious discrimination by PNC. *See id.* (concluding that the plaintiff's discrimination claims lacked merit because he failed to present "any evidence, outside of his own conclusory say-so, that would support an inference of . . . discrimination from the circumstances"). *Cf. Bailey*, 992 F.3d at 1278–81.

Thus, we conclude that the district court did not err in granting summary judgment to PNC as to Bhuiyan's religious-based discrimination and retaliation claims.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of PNC.

**AFFIRMED.**