Douglas M. JONES, Plaintiff–Appellee,

v.

**Richard A. HEYMAN, Defendant–Appellant.**

No. 88–5858.

United States Court of Appeals, Eleventh Circuit.

Nov. 22, 1989.

Michael T. Burke, Ft. Lauderdale, Fla., for defendant-appellant.

David P. Karcher, Miami, Fla., for plaintiff-appellee.

Before ANDERSON and COX, Circuit Judges, and BUTLER *, District Judge.

PER CURIAM:

This appeal arises from an action that Douglas M. Jones, a citizen of the city of Key West, Florida, filed against Key West's former mayor, Richard Heyman, and the City of Key West.[1] Jones claimed that the mayor and the city violated his First and Fourteenth Amendment rights when Jones was silenced and removed from a public meeting of the Key West City Commission. The district court agreed and awarded Jones compensatory and punitive damages. For the reasons set forth below, we reverse.

## I. BACKGROUND

On February 5, 1985, Jones attended a meeting of the Key West City Commission. As the mayor of the city, Heyman presided at the meeting. Although Jones was a member of the city's civil service board, Jones attended the meeting in his capacity as a private citizen. Jones had attended and voiced his opinion at many commission meetings in the past. On the evening in question, Jones complied with the customary procedure to be recognized to speak on an item on the agenda. He submitted his name and the topic on which he wished to speak—senior citizen discounts for garbage removal.

The meeting began at approximately 8:00 p.m. Two and one half hours later, the city commissioners turned to this topic, and the mayor recognized Jones' request to speak. Jones approached the podium, and began by criticizing the commission's general spending habits. The mayor quickly rebuked Jones, advising him to confine his comments to the topic at hand. Jones retorted in a raised voice: "Let me tell you something Mister, I am on the subject. If you can't stay germane in your mind, that's your problem, not mine." At this point, Jones' attitude was decidedly antagonistic. The mayor warned Jones that any further outbursts would result in his removal from the meeting. Jones responded by saying, "I don't think you're big enough," and the mayor ordered his expulsion.[2]

Jones was escorted out of the meeting by two city police officers, taken to a detaining room, and handcuffed to the wall. He was later released when the mayor told an officer he wanted Jones removed rather than arrested. Although advised by the police officers not to reenter the commissioners' meeting, which was still continuing, Jones attempted to do so. He was then handcuffed again and taken back to the detaining room. There is no evidence that the mayor caused Jones to be handcuffed or arrested. At the time, Jones was charged with violating City Ordinance 85–1 [3], which prohibits conduct intended to

---

* Honorable Charles R. Butler, U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. The City of Key West, initially an appellant, has dismissed its appeal and is no longer a party in this action.

2. This entire incident was recorded on video tape; this tape forms part of the record on review. For a verbatim transcript of the entire exchange, see the district court's opinion at 679 F.Supp. 1547, 1550–51.

3. More specifically, Ordinance No. 85–1 provides in relevant part:
   Section 1: It shall be unlawful for any person to disturb or interrupt any meeting of the City Commission. The use of obscene or profane language, physical violence or the threat thereof, or other loud and boisterous behavior which the presiding officer or a majority of the commission shall determine is intended as a disruption of the meeting and a failure to comply with any lawful decision or order of the presiding officer or of a majority of the City Commission shall constitute a disturbance.

   \*       \*       \*       \*       \*       \*

   Section 3: Any person violating the provisions of this Ordinance may be ejected from the Commission Chambers or other meeting room for the duration of the meeting or such lesser period as the presiding officer or a majority of the commission shall determine. Any decision of the presiding officer hereunder shall be subject to appeal pursuant to Robert's Rules of Order and the by-laws of the Commission.

disrupt city commission meetings.[4]

Key West City Commission meetings are broadcast live in the city and surrounding county. Area television viewers thus witnessed both the verbal exchange between Jones and the mayor and Jones' subsequent expulsion from the room. The incident was re-televised several times after the initial broadcast and publicized by the local newspaper and radio stations. Jones testified that both the incident and the surrounding publicity embarrassed his family and caused his business to decline.

Jones filed suit against the mayor and the City of Key West for a violation of 42 U.S.C.A. § 1983 (1981), alleging that his removal from the meeting constituted a deprivation of his rights under the First and Fourteenth amendments. Jones also sought a declaratory judgment invalidating Ordinance 85–1 as unconstitutionally vague and overbroad, and a permanent injunction barring its enforcement. The city and the mayor answered that Jones was removed from the meeting for creating a disturbance in violation of the ordinance and that the mayor had acted in good faith and under the reasonable belief that this ordinance was constitutional. The mayor also asserted that his decision to remove Jones was protected by the qualified immunity doctrine because the mayor did not violate Jones' clearly established First Amendment rights.

Following a bench trial, the district court held that the mayor had silenced Jones based on the content of his comments and thus deprived him of his First Amendment right of free speech. The court examined the manner and content of Jones' "challenge" to the mayor—"I don't think you're big enough"—and concluded it was neither

sufficiently violent or provocative to constitute "fighting words" outside the scope of First Amendment protection. Although noting its lack of clarity, the court declined to pronounce Ordinance 85–1 void for vagueness or unconstitutionally overbroad. The court then rejected the mayor's qualified immunity defense. Based on Jones' testimony as to the emotional and economic injury he suffered from the incident, the court awarded Jones compensatory damages of $31,500. The district court also found that the mayor's actions had "evinced callous indifference to the Plaintiff's first amendment rights," and ordered that the mayor pay $31,500 in punitive damages.[5] *Jones v. City of Key West, Fla.*, 679 F.Supp. 1547, 1563 (S.D.Fla.1988).

The mayor presents three issues on appeal.[6] First, he challenges the district court's ruling that his actions impermissibly deprived Jones of his freedom of speech. Second, he contends he is entitled to qualified immunity for his discretionary decision to remove Jones from the meeting. Third, the mayor argues that the award of punitive damages is unsupported by the law and the evidence of the case. Because we reverse on the first issue, we need not address the mayor's second and third contentions.

## II. DISCUSSION

We initially note that we must conduct a de novo review of the evidence in the record and independently determine whether Jones' First Amendment rights have been violated. "In reviewing findings of fact in first amendment cases, this Court must make an 'independent examination of the whole record,' rather than relying sole-

This ordinance was drafted by the city attorney and enacted only one month prior to this incident.

4. Prior to Jones' suit in the district court, this criminal charge was tried in the County Court in and for Monroe County. After a one and one-half day jury trial, Jones was pronounced not guilty of violating the ordinance.

5. In an order dated January 22, 1986, the district court dismissed Jones' claim for punitive damages against the city. The court thus con-

sidered the question of punitive damages only against the mayor.

6. Jones does not challenge by cross-appeal the district court's refusal to pronounce Ordinance 85–1 void for vagueness or unconstitutionally overbroad.

The mayor's fourth ground of appeal, which challenged the district court's award of compensatory damages, was rendered moot by the settlement between the city and Jones and eliminated from appellate review.

ly on the 'clearly erroneous' standard." *McMullen v. Carson,* 754 F.2d 936, 938 (11th Cir.1985) (citing *Bose Corp. v. Consumers Union,* 466 U.S. 485, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984); *New York Times v. Sullivan,* 376 U.S. 254, 284–86, 84 S.Ct. 710, 728–29, 11 L.Ed.2d 686 (1964)). The facts in this case are essentially undisputed. We conclude that Jones has not demonstrated that the mayor's actions abridged his freedom of speech within the meaning of the First Amendment.

The freedom of expression protected by the First Amendment is not inviolate; the Supreme Court has established that the First Amendment does not guarantee persons the right to communicate their views "at all times or in any manner that may be desired." *Heffron v. International Soc'y. for Krishna Consciousness,* 452 U.S. 640, 647, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981); *Adderley v. Florida,* 385 U.S. 39, 48, 87 S.Ct. 242, 246, 17 L.Ed.2d 149 (1966). Accordingly, in evaluating a citizen's right to express his opinion on public property, the Court has established certain boundaries within which it balances a citizen's First Amendment rights and the government's interest in limiting the use of its property. In a traditional public forum, such as a park or a street, the government's power to limit expressive activity is severely curtailed:

> "For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.... The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication."

*Airport Comm'rs. of Los Angeles v. Jews for Jesus,* 482 U.S. 569, 573, 107 S.Ct. 2568, 2571, 96 L.Ed.2d 500 (1987) (quoting *Perry Educ. Ass'n. v. Perry Local Educators' Assn.,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)). The same analysis applies to speech on property which is not a traditional public forum, but which has been intentionally designated a public forum for a certain time period.[7] In a nonpublic forum, however, the government may limit expressive activity with less exacting scrutiny by the courts. Such regulations are upheld in a nonpublic forum if they are reasonable and not merely the result of disagreement with the speaker's point of view. *Jews for Jesus,* 482 U.S. at 573, 107 S.Ct. at 2571; *Cornelius v. NAACP Legal Defense and Educ. Fund,* 473 U.S. 788, 806, 105 S.Ct. 3439, 3451, 87 L.Ed.2d 567 (1985); *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 812, 104 S.Ct. 2118, 2133, 80 L.Ed.2d 772 (1984).

We agree with the district court that the city commission designated their meeting a public forum when the commission intentionally opened it to the public and permitted public discourse on agenda items.[8] As noted by the district court, although the commission need not have created this forum in the first place, once it did so, the commission became bound by the same standards that apply in the case of a traditional public forum. Content-neutral time, place and manner restrictions are permissible if they are narrowly drawn to achieve a significant governmental interest and if they allow communication through other channels. Content-based exclusions must be narrowly tailored to effectuate a compelling governmental interest. We address each question separately.

### A. Content

The government's purpose in limiting one's speech in a public forum constitutes the "controlling consideration" in determin-

7. Examples of public forums created by governmental designation include a university's meeting facilities, *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981); a municipal theater, *Southeastern Promotions Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); and a school board meeting, *City of*

*Madison Joint School Dist. v. Wisconsin Employment Relations Comm'n,* 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976). *See Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. at 955.

8. The parties apparently don't dispute this conclusion, for neither party contends otherwise.

ing content neutrality. *Ward v. Rock Against Racism,* —— U.S. ——, ——, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989). Even if a limitation on speech incidentally affects only some speakers, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral.... Government regulation of expressive activity is content-neutral so long as it is *'justified* without reference to the content of the regulated speech.' " *Id.* at ——, 109 S.Ct. at 2754 (quoting *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)).

The district court found that Jones had complied with the time, place and manner restrictions imposed on the meeting and was silenced because of the content of his speech. We disagree. In our opinion, the mayor's actions resulted not from disapproval of Jones' message but from Jones' disruptive conduct and failure to adhere to the agenda item under discussion. Jones began by admonishing the commission to act more prudently in its spending habits, particularly with respect to its spending on waste disposal. The commissioners' general fiscal habits were *not* the topic of debate, however, and the mayor quickly directed Jones to speak only on the relevant issue. Jones' retort—that his comments were germane and that it was the mayor's "problem" if he failed to recognize this—was also irrelevant, and Jones was warned that any further outbursts would result in his removal. Jones responded, "I don't think you're big enough," and was expelled. The substance of Jones' views on the agenda item was thus never expressed. We decline to rule that his expulsion was based on disapproval of the content of his opinion in view of this fact.

One could reasonably infer from both Jones' opening comment and his mannerisms that his opinion would be critical of the commission's actions. In this sense, the mayor could have disapproved of the content of Jones' message. However, we also realize and emphasize that we necessarily must view this brief incident from hindsight, and we are hesitant to speculate about the mayor's exact mindset at the moment he ordered Jones' removal. The

mayor testified at trial that he perceived that Jones' disruptive behavior would worsen if ignored, that Jones presented a possible threat of violence to the commission, and that Jones was questioning the mayor's authority to preside over the session. In view of this testimony and the plain fact that Jones did fail to address the subject of senior citizen discounts, we conclude that Jones has not demonstrated that the mayor's actions resulted from disapproval of Jones' message rather than from the need to continue the orderly progression of an already lengthy commission meeting.

B. Significant Governmental Interest

A valid time, place and manner regulation must be "narrowly tailored to serve a significant governmental interest." The Supreme Court has recognized the significance of the government's interest in conducting orderly, efficient meetings of public bodies. In *City of Madison, Joint School Dist. v. Wisconsin Employment Relations Comm'n,* 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976), a case considered persuasive by the district court, a teachers' union charged that the school board had committed a prohibited labor practice in allowing a non-union teacher to speak on a matter subject to collective bargaining at an open school board meeting. The Supreme Court held that the First Amendment permitted teachers to speak at public meetings of the school board, even if they are not union representatives and even if "such speech is addressed to the subject of pending collective-bargaining negotiations." *Id.* at 169, 97 S.Ct. at 423. The Court deemed the union's attempt to limit "participation in public discussion of public business ... to one category of interested individuals" the "antithesis of [the] constitutional guarantees." *Id.* at 175–76, 97 S.Ct. at 426. The Court qualified its broad language, however, with this relevant statement: *"Plainly, public bodies may confine their meetings to specified subject matter* and may hold nonpublic sessions to transact business." *Id.* at 176 n. 8, 97 S.Ct. at 426 n. 8 (emphasis

added). Justice Stewart discussed this qualification in his concurrence:

A public body that may make decisions in private has broad authority to structure the discussion of matters that it chooses to open to the public. Such a body surely is not prohibited from limiting discussion at public meetings to those subjects that it believes will be illuminated by the views of others and in trying to best serve its informational needs while rationing its time.

*Id.* at 180, 97 S.Ct. at 427 (Stewart, J., concurring).

We believe this reasoning controls the instant case and consider the mayor's interest in controlling the agenda and preventing the disruption of the commission meeting sufficiently significant to satisfy this governmental interest prong of the analysis. Unlike the situation in *City of Madison,* the mayor was not attempting to limit the discussion to one category of interested individuals. The topic of senior citizen discounts arose at 10:30 p.m., approximately two and one half hours after the meeting began. Although Jones was the only member of the public scheduled to speak on this subject,[9] and although the record does not reveal the number of topics covered in any one commission meeting, we feel that the mayor certainly had an important interest in confining Jones to the topic at hand and in preventing disruption of the meeting. To hold otherwise—to deny the presiding officer the authority to regulate irrelevant debate and disruptive behavior at a public meeting—would cause such meetings to drag on interminably, and deny others the opportunity to voice their opinions.

The Eighth Circuit's opinion in *Wright v. Anthony,* 733 F.2d 575 (8th Cir.1984), comports with our reasoning. In *Wright* the plaintiff claimed a violation of his First Amendment rights when a congressman silenced him at a public hearing on social security reform. The plaintiff had been given informal notice to limit his presentation to five minutes; the plaintiff had finished only half of this presentation when he exceeded this time limit and was interrupted. The Eighth Circuit affirmed the district court's dismissal of the plaintiff's complaint, holding that the congressman's actions constituted a reasonable attempt to regulate the time, place and manner of the plaintiff's speech. The court recognized the significance of the congressman's interest in running the meeting, stating: "[T]he [time, place and manner] restriction may be said to have served a significant governmental interest in conserving time and in ensuring that others had an opportunity to speak." *Id.* at 577.

### C. Narrowly Tailored Means

The mayor's actions must also be narrowly tailored to achieve this interest. As recently clarified by the Supreme Court, the means adopted by the government need not be the least-intrusive or least-restrictive means to satisfy this prong of the analysis. Instead, "the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Rock Against Racism,* —— U.S. at ——, 109 S.Ct. at 2758 (quoting *United States v. Albertini,* 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985)). The analysis does not hinge on the " 'judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." *Rock Against Racism,* —— U.S. at ——, 109 S.Ct. at 2758 (quoting *Albertini,* 472 U.S. at 689, 105 S.Ct. at 2906).

The district court found that Jones was "quite clearly *laying the groundwork* for a presentation focusing on the senior citizen discount issue." 679 F.Supp. at 1547 (emphasis added). The court apparently opined that Jones had not wandered far from the subject of the agenda item and

---

**9.** The mayor testified that when an agenda item was a controversial one—one that many persons wanted to address—speakers were generally allotted two or three minutes apiece. The subject of senior citizen discounts was not such a topic, and Jones was not silenced because he exceeded this pre-set time limitation.

**1334**

that if left alone, Jones would immediately proceed to it. We could agree. It is also possible, however, that Jones would have continued to wander from the subject in question and unduly prolong the meeting. This is a judgment call that a presiding officer and parliamentarian must make without the benefit of leisure reflection. *Rock Against Racism* instructs us that our agreement with the mayor concerning the most appropriate method of conducting the meeting is not the test. An erroneous judgment call on the part of a presiding officer does not automatically give rise to liability for a constitutional tort. The mayor's actions in this case constituted a reasonable attempt to confine the speaker to the agenda item in question, and that conclusion should end the inquiry. We should not inquire whether we as presiding officers would have handled the matter in the same way.

D. Alternative Channels of Communication

The last requirement, that there remain ample alternative channels of communication, is easily satisfied in this case. The mayor testified at trial that the city commission provided for public discussion of non-agenda items at the end of every meeting. If Jones wanted to discuss the general fiscal responsibility of the commission or some other non-agenda item, he would have only had to wait until the end of the meeting, which was approximately one half hour from the time Jones took the podium.

We thus conclude that the mayor acted reasonably in regulating the time, place and manner of Jones' speech. Accordingly, the judgment of the district court is REVERSED.