828 So.2d 411 (2002)
HOMESTEAD-MIAMI SPEEDWAY, LLC., Appellant,
v.
CITY OF MIAMI, etc., et al., Appellees.
Nos. 3D02-1506, 3D02-811, 3D02-814.
District Court of Appeal of Florida, Third District.
September 30, 2002.
*412 Kenny Nachwalter, and Kevin J. Murray, and Thomas H. Seymour, and Robert D.W. Landon, III, Miami, for appellant.
Alejandro Vilarello, City Attorney, and Henry Hunnefeld, Assistant City Attorney, and Myrna D. Bricker, Assistant City Attorney, and Erica Wright, Assistant City Attorney; and Lauri Waldman Ross, and Theresa L. Girten; Greenberg Traurig, and Alan T. Dimond, and Elliot H. Scherker, and Paul C. Savage, Miami, for appellees.
Before FLETCHER, and RAMIREZ, JJ., and NESBITT, Senior Judge.
RAMIREZ, J.
In this consolidated appeal, the City of Miami and intervenor Raceworks LLC appeal the entry of summary final judgment in favor of Homestead-Miami Speedway LLC ("Speedway") in which the trial court held that the original agreement between Raceworks and the City of Miami was void and issued an injunction prohibiting any races from going forward under that agreement.[1] Speedway appeals from a summary final judgment entered in the City's favor in which the trial court held that the City did not violate the Sunshine Law in its negotiations with Speedway. We affirm the trial court's determination that the agreement was a lease, not a license, and as such should have been competitively bid as required by the City Charter.[2] We also affirm the trial court's determination that there were no Sunshine Law violations.
The original agreement between the City and Raceworks was not a license *413 because a license is revocable at will and cannot be assigned. See Outdoor Media of Pensacola, Inc. v. Santa Rosa County, 554 So.2d 613 (Fla. 1st DCA 1989) (county's granting exclusive right to use right of way was a lease subject to competitive bidding procedures). See also Randall Indus., Inc. v. Lee County, 307 So.2d 499 (Fla. 2d DCA 1975) (license agreement which gave taxi company exclusive use of airport parking spaces was a lease which required competitive bidding). The agreement at issue here was assignable and could not be revoked without notice of default and the opportunity to cure. Additionally, Raceworks was given the exclusive use of Bayfront Park for at least three days each year for fifteen years.
Since the agreement between the City and Raceworks was a lease, it fell within the purview of section 3(f)(iii) and section 29-A(d) of the City Charter.[3] The pre-amendment language of section 3(f)(iii) required competitive bidding for the commercial use of any of the City's waterfront property.[4] Section 29-A(d) requires competitive bidding for any agreement which conveys any interest the City has in waterfront property. The City leases the waterfront from the federal government. The agreement at issue here gave Raceworks in effect a sub-lease for Bayfront Park, part of the City's interest in waterfront property. Thus, the original agreement to hold races in Bayfront Park should have been the result of competitive bids.
The trial court therefore correctly held that the City was required to follow competitive bid procedures and that any contract for the use of the City's waterfront property entered into without complying with those procedures was void. However, we agree with the City that paragraph 5 of the March 4, 2002 order must be deleted because it was neither pled nor requested by Speedway. See Cardinal Inv. Group, Inc. v. Giles, 813 So.2d 262, 263 (Fla. 4th DCA 2002) ("[C]ourts are not authorized to grant relief not requested in the pleadings.")
Florida's Sunshine Law, section 286.011(1), Florida Statutes, provides that:
All meetings of any board or commission of any ... municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings.
Speedway argues that the City violated the Sunshine Law because it held no public hearing on the final negotiated contract *414 before the City voted to approve the proposed contract at the August 9, 2001 meeting, and there was no cure by the City of this violation. The record reflects, however, that there were meetings regarding the proposed agreement between the City Manager and Raceworks in which there was public participation and debate. The publicly noticed meetings were held on May 24, 2001, July 10, 2001, July 26, 2001, August 9, 2001 and September 25, 2001, and involved a discussion of the terms of the proposed agreement. At the July 10 and July 26 meetings, there was specific public comment regarding the proposed agreement. Furthermore, Speedway has not relied upon any case which requires that "all" such negotiations be open to the public so as not to violate the Sunshine Law. We thus find that the public was involved in the decision making process that resulted in the final negotiated contract of the parties and Speedway's argument lacks merit.
This appeal was further complicated by a subsequent agreement between the parties negotiated after the trial court had entered summary judgment. Despite this new agreement, the City and Raceworks continue to argue the validity of the old agreement. By our opinion today, we do not address whether the subsequent agreement between the City and Raceworks was also subject to competitive bidding because the trial court has never ruled on the legality of the new agreement.
Affirmed in part, reversed in part.
NOTES
[1] Order of March 4, 2002:

1. Speedway has standing to assert its claims and the contract is a lease.
2. Because the contract is a lease, the City was and is required to follow competitive bid procedures applicable to leases, and the City's failure to do so renders the contract void as a matter of law.
3. Alternatively, even if the contract were not a lease, the City was required to follow competitive bid procedures pursuant to the provision of City Charter § 3(f)(iii). The City's admitted failure to follow any competitive bid procedures renders the contract void as a matter of law.
4. The contract between the City and Raceworks, which is acknowledged to have been entered into without the City having complied with any of the applicable competitive bid procedures, is hereby declared null, void and of no further legal effect.
5. The City is hereby directed to comply with all applicable competitive bid procedures, and thereby to give Speedway a full and equal opportunity to submit a competing bid, and to have its bid fully and equally considered, before entering into any lease, or any contract for use of the City's waterfront property, for motor car races.
6. The City and Raceworks' cross-motions for summary judgment on Counts V and VI of the Second Amended Complaint are denied.
[2] We do, however, reverse the language contained in paragraph 5 of the March 4, 2002 order as it exceeded the relief requested in the pleadings.
[3] Section 29-A(d) of the City Charter states: "[s]ales and leases of real property; prohibition. Except as otherwise provided in this charter section, there shall be no sale, conveyance, or disposition of any interest, including any leasehold, in real property owned by the city ... unless there has been prior public notice and a prior opportunity given to the public to compete for said real property or interest."

Section § 3(f)(iii) of the City Charter states:
"[t]he City of Miami shall have power ... [t]o lease to or contract with private firms or persons for the commercial use or management of any of the city's waterfront property, but only in compliance with the other requirements of this charter and on condition that... (D) the procurement methods prescribed by ordinances are observed. Any such lease or management agreement ... which does not comply with each of the above conditions shall not be valid unless it has first been approved by a majority of the voters of the city."
[4] The City Charter was amended by referendum on November 6, 2001 to delete the words "commercial use" from section 3(f)(iii).