Mr. Charles Campbell Board of Trustees, Port Malabar Holiday Park Mobile Home Recreation District 215 Holiday Park Boulevard Northeast Palm Bay, Florida 32907
Dear Mr. Campbell:
On behalf of the Board of Trustees of the Port Malabar Holiday Park Mobile Home Recreation District (district), you ask substantially the following questions:
1) May the Board of Trustees of the Port Malabar Holiday Park Mobile Home Recreation District create a code enforcement board pursuant to Part I, Chapter 162, Florida Statutes, to enforce its rules and regulations?
2) Does section 418.304(4)(b), Florida Statutes, preclude nonqualified electors from speaking at a meeting of the district board of trustees to consider the district budget?
Question One
According to your letter, the Port Malabar Holiday Park Mobile Home Recreation District (district) was created pursuant to Part II, Chapter 418, Florida Statutes, which authorizes any municipality or county in the state to create one or more mobile home park recreation districts.[1] This office has been advised that the district operates as an independent special district.[2]
Pursuant to section 418.304, Florida Statutes, the ordinance creating or amending the charter of a mobile home park recreation district may grant to the recreation district the authority "[t]o adopt rules and regulations not inconsistent with existing deed restrictions and to use district funds in the administration and enforcement of such rules, regulations, and deed restrictions."[3] You ask whether the board of trustees may create a code enforcement board pursuant to section162.03(1), Florida Statutes, to enforce such restrictions and regulations.
Section 162.03(1), Florida Statutes, provides that "[e]ach county ormunicipality may, at its option, create or abolish by ordinance local government code enforcement boards as provided herein."[4] (e.s.) Numerous opinions of this office have stated that special districts constitute neither municipalities nor counties, but are statutory entities created for definitely restricted purposes and not for general local government.[5] Though a mobile home park recreation district may be created by a county or municipality, that does not make such a district a county or municipality.
Accordingly, I am of the opinion that section 162.03(1), Florida Statutes, does not authorize the district to create a code enforcement board to enforce its rules, regulations, and restrictions.
Question Two
Section 418.304(4), Florida Statutes, provides for the levy and assessment of a special assessment known as a "recreation district tax" against all improved residential parcels situated within the district for the purpose of providing funds to implement the powers of the district. The statute requires, among other things,
"(b) The trustees shall, on or before July 30 of each year, by resolution, fix the amount of the assessment for the next ensuing year. . . . Prior to the adoption of the resolution fixing the amount of theassessment, the trustees shall hold a public hearing at which timequalified electors of the district may appear and be heard. Notice of the time and place of the public hearing shall be published once in a newspaper of general circulation within the county at least 21 days prior to the public hearing." (e.s.)
You ask whether this provision precludes a nonqualified elector from speaking at such a hearing.
The above statute establishes the right of qualified electors of the district to attend and be heard at the hearing considering the imposition of the special assessment. While the statute does not create a right for nonqualified electors to speak at such meetings, neither does it prohibit such individuals from participating. The courts of this state and this office have recognized the importance of public participation in open meetings.[6] This office, however, has recognized the authority of a public body to adopt reasonable rules and policies to ensure the orderly conduct of a public meeting, including the orderly behavior of those attending.[7] For example, this office determined that a rule limiting the amount of time an individual could address a board could be adopted, provided the time limit did not unreasonably restrict the public's right of access under the Government in the Sunshine Law.[8]
Accordingly, I am of the opinion that section 418.304(4)(b), Florida Statutes, does not preclude nonqualified electors from speaking at a meeting of the district board of trustees to consider the district budget; the board, however, may adopt reasonable regulations regarding the orderly conduct of the meeting.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See s. 418.30, Fla. Stat., which provides:
"Any municipality or county in the state is authorized to create one or more mobile home park recreation districts. Each such district shall be limited to the boundaries of a mobile home park and shall be established by an ordinance approved by a vote of the electors residing in the proposed district. Such ordinance, as it may from time to time be amended by the governing body of the municipality or county and approved by a vote of the electors in the district, shall constitute the charter of the district. The electors residing in a proposed district may petition the governing body of the municipality or county to create a mobile home park recreation district. If a majority of electors of the proposed district has signed the petition, no referendum shall be required to create the district."
[2] The district is listed on the Official List of Special Districts as an independent special district by the Department of Community Affairs.See s. 189.4035(1), Fla. Stat., requiring the Department of Community Affairs to compile the official list of special districts which shall include all special districts in this state and shall indicate the independent or dependent status of each district.
[3] Section 418.304(12), Fla. Stat.
[4] And see s. 162.04(1), Fla. Stat., defining "Local governing body" to mean the governing body of the county or municipality, however designated.
[5] See, e.g., Ops. Att'y Gen Fla. 79-03 (1979), 74-169 (1974), 74-49 (1974), 73-443 (1973). And see s. 165.031(2), (4) and (5), Fla. Stat., defining "Local general-purpose government," "Municipality," and "Special district," respectively, for the purposes of the Formation of Local Governments Act, Ch. 165, Fla. Stat.
[6] See, e.g., Board of Public Instruction of Broward County v. Doran,224 So.2d 693, 699 (Fla. 1969) (specified boards and commissions . . . should not be allowed to deprive the public of this inalienable right to be present and to be heard at all deliberations wherein decisions affecting the public are being made); Town of Palm Beach v.Gradison, 296 So.2d 473, 475(Fla. 1974); Krause v. Reno, 366 So.2d 1244,1250 (Fla. 3rd DCA 1979) ("citizen input factor" is an important aspect of public meetings). But see Wood v. Marston, 442 So.2d 934, 941 (Fla. 1983), in which the Court held that the public did not have a right to speak at a meeting of a committee appointed by a university president to recommend candidates for a university position; Law and Information Services, Inc.v. City of Rivera Beach, 670 So.2d 1014, 1016 (Fla. 4th DCA 1996), citingMarston for the principle that the public does not have a right to speak on all issues prior to resolution of the issue by the board;Homestead-Miami Speedway, LLC v. City of Miami, 828 So.2d 411 (Fla. 3rd DCA 2002) (city did not violate Sunshine Law when there was public participation and debate in some but not all meetings regarding a proposed contract).
[7] See, e.g., Inf. Op. to John Thrasher, dated January 27, 1994. Cf.Jones v. Heyman, 888 F.2d 1328, 1333 (11th Cir. 1989), stating that "to deny the presiding officer the authority to regulate irrelevant debate and disruptive behavior at a public meeting_would cause such meeting to drag on interminably, and deny others the opportunity to voice their opinions." The court concluded that a mayor's actions in attempting to confine the speaker to the agenda item and having the speaker removed when the speaker became disruptive constituted a reasonable time, place and manner regulation and did not violate the speaker's First Amendment rights.
[8] Informal Op. to Joseph P. Caetano, dated July 2, 1996, noting that the Government in the Sunshine Law requires that meetings of a public board or commission be "open to the public" and that the courts have recognized the importance of public participation in open meetings. On the other hand, in commenting on whether a district board could restrict the right to speak at public meetings to residents or landowners within the district, this office advised that "it is not readily apparent how the residence of the speaker or his or her ownership of property in a certain area would be relevant to the orderly conduct of a meeting." Id.
The Eleventh Circuit Court of Appeal, however, in
Rowe v. City of Cocoa, Fla., 358 F.3d 800, 804 (11th Cir. 2004), upheld a city regulation which limiting the speech of nonresidents against claims that such regulation violated First Amendment and Equal Protection protections, stating:
"A bona fide residency requirement . . . does not restrict speech based on a speaker's viewpoint but instead restricts speech at meetings on the basis of residency. . . . [T]here is a significant governmental interest in conducting orderly, efficient meetings that are limited to a specific subject matter germane to an agenda at hand. . . . To permit non-residents, those without a direct stake in the outcome of a City's business, to ramble aimlessly at City Council meetings on topics not related to agenda items would be inefficient and would unreasonably usurp "the presiding officer the authority to regulate irrelevant debate . . . at a public meeting." . . . The restrictions in the challenged regulations are reasonable and viewpoint neutral."