[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 23, 2007
THOMAS K. KAHN
CLERK

No. 03-16514
_____

D.C. Docket No. 02-01294-CV-ORL-22KRS

ALBERT CLEVELAND,

Plaintiff-Appellant,

versus

CITY OF COCOA BEACH, FLORIDA,
JANICE SCOTT,
GARY  E. ECKSTINE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 23, 2007)**

Before TJOFLAT and HILL, Circuit Judges, and GRANADE,* Chief District
Judge.

GRANADE, Chief District Judge:

_____

*Honorable Callie V. S. Granade, Chief United States District Judge for the Southern District of
Alabama, sitting by designation.

# I. INTRODUCTION

This action arises out of the events occurring at a city commission meeting for the City of Cocoa Beach, Florida, on October 17, 2002. Plaintiff, Albert Cleveland, alleges that his First Amendment rights were violated when the former mayor Janice Scott told Cleveland he could not wear a T-shirt at the meeting that contained a political message regarding the ongoing mayoral race. Cleveland also claimed that the City and the city's attorney, Gary E. Eckstine, adopted or acquiesced in then Mayor Scott's actions.

Cleveland filed a 42 U.S.C. §1983 action against the City of Cocoa Beach and against Janice Scott and Gary E. Eckstine, in their individual capacities. The district court granted summary judgment in favor of all defendants, finding no constitutional violation and finding that Scott and Eckstine were entitled to qualified immunity. Cleveland appeals that ruling.

# II. FACTS

At the time of the meeting, Mayor Janice Scott was running for reelection. It was Scott's responsibility, as mayor, to be chairperson of the meeting. At the meeting, which was broadcast on television, one of Scott's supporters, Lisa

Shepline[1], took the podium wearing a pro-Scott campaign button. Scott informed her that she was not allowed to be on television with her political message and she thereupon reversed the pin so that the message was hidden. Later in the meeting, plaintiff Albert Cleveland, a former city commissioner, took a seat in the audience wearing a T-shirt bearing the words "VOTE SKIP BEELER MAYOR  For Seat 1 For Everyone" on the front and "I SUPPORT SKIP BEELER for MAYOR COCOA BEACH" on the back. Mayor Scott told plaintiff that he could not wear the shirt and he needed to turn it inside out. Plaintiff demanded to know under what law he was required to do so. When the mayor asked the city attorney, Gary E. Eckstine, to articulate the rule, Eckstine responded that the City Commission has an inherent power to set its own procedural rules and regulate its meetings, including restricting demonstrations or printed material, as long as those restrictions are content neutral. He gave the opinion that the rule prohibiting wearing political speech was content neutral and was a restriction that the Commission could legally adopt. The City's Sergeant of Arms approached plaintiff and he left the meeting room. After turning his shirt inside out, plaintiff returned to the meeting. During the public comment portion of the meeting, plaintiff spoke at the podium. He made pointed remarks about the apparent "dress

---

[1]Her last name is spelled several different ways in the record of this case.

code" and said he would be back the next day to pick up a copy of the code. Plaintiff also stated that he hoped that in two weeks Scott would have more time to go to ball games, implying that he hoped she would not win the election.

There is no evidence that any prior city meeting had been disrupted because of the wearing of political speech, nor that the City have any written policy regarding the wearing of such political speech. According to Scott, she believed the City had a policy prohibiting campaigning in City Hall or on municipal property. The City later allowed political campaign messages to be displayed on participants clothing and, in fact, allowed Cleveland to wear the T-shirt in question at the next City meeting.

### III. STANDARD OF REVIEW

Our review of a summary judgment decision is de novo and the legal standard we apply is the same that bound the district court. Williams v. Morgan, --- F.3d ----, 2007 WL 465567 (11th Cir. Feb 14, 2007), citing Cruz v. Publix Super Markets, Inc., 428 F. 3d 1379, 1382 (11th Cir. 2005).

### IV. ANALYSIS

Cleveland maintains that the restriction placed on his speech was not viewpoint-neutral, was unreasonable and not narrowly tailored to the purpose of the limited public forum, and that the restriction constituted the City's policy,

thereby exposing it to liability under 42 U.S.C. § 1983. He also claims that Scott

and Eckstine are not entitled to qualified immunity because every reasonable and

competent mayor and municipal attorney would know that the restriction violated

his constitutional right to free speech. According to Cleveland, punitive damages

are appropriate because there is evidence of evil motive and reckless abridgement

of Cleveland's federally protected rights.

We first decide whether the facts demonstrate a constitutional violation.

"The freedom of expression protected by the First Amendment is not inviolate; the

Supreme Court has established that the First Amendment does not guarantee

persons the right to communicate their views 'at all times or in any manner that

may be desired.'" Rowe v. City of Cocoa, Fla., 358 F.3d 800, 802 (11th Cir. 2004)

(citing Jones v. Heyman, 888 F.2d 1328, 1331 (11th Cir. 1989)). City commission

meetings may be restricted "to specified subject matter." Id. (quoting Jones, 888

F.2d at 1332).

> Stated differently, city commission meetings are "limited" public
> fora–i.e., "a forum for certain groups of speakers or for the discussion
> of certain subjects." Crowder v. Housing Auth. of City of Atlanta,
> 990 F.2d 586, 591 (11th Cir. 1993) (citing Perry Educ. Ass'n. v. Perry
> Local Educators' Ass'n, 460 U.S. 37, 46 n. 7, 103 S.Ct. 948, 74
> LED.2d 794 (1983). As such, "the government may restrict access to
> limited public fora by content-neutral conditions for the time, place,
> and manner of access, all of which must be narrowly tailored to serve
> a significant government interest." Id. (citing Perry, 460 U.S. at 45-
> 46, 103 S.Ct.948).

Rowe, 358 F.3d at 802-03. "[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, ... they are narrowly tailored to serve a significant governmental interest, and ... they leave open ample alternative channels for communication of the information.'" Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989). "When the [government] establishes a limited public forum, the [government] is not required to and does not allow persons to engage in every type of speech." Good News Club v. Milford Central School, 533 U.S. 98, 106, 121 S.Ct. 2093, 2100, 150 L.Ed.2d 151 (2001). "[W]hile a public entity may not censor speech about an authorized topic based on the point of view expressed by the speaker, it has broad discretion to preserve the property under its control for the use to which it is lawfully dedicated." Good News Club v. Milford Central School, 533 U.S. 98, 130-131, 121 S.Ct. 2093, 2113 (2001) (citations and internal quotations omitted) (STEVENS, J., dissenting). However, [t]he restriction must not discriminate against speech on the basis of viewpoint, ... and the restriction must be 'reasonable in light of the purpose served by the forum,'" Id. at 106-07 (citing Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995) and Cornelius v. NAACP Legal

6

Defense & Ed. Fund, Inc., 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). "In addition to time, place, and manner regulations, the [government] may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983).

The district court correctly found that the city council meeting constituted a limited public forum where subjects of discussion were limited to those relevant to city business. As such the level of scrutiny of the restriction of speech is less than if speech is restricted in a fully public forum. At a limited public forum, content discrimination is permissible if it is reasonable, given the limited forum's purpose; viewpoint discrimination is not. The prohibition against the display of campaign messages in this case was content-based, but viewpoint-neutral.[2] Mayor Scott prohibited only speech in which the subject matter pertained to the local political campaign. However, she restricted the promotional campaign materials evenhandedly, without regard to the particular candidate that was being endorsed.

---

[2] City Attorney Eckstine's opinion to the contrary which he stated at the council meeting was incorrect.

She banned not only a message in support of her opponent, but also a message in support of her own re-election. Although Cleveland contends that the prohibition was enforced more harshly or with greater enthusiasm against him, the record demonstrates that any difference in the degree of enforcement was not due to the viewpoint of the message he was displaying. On noticing that a supporter was wearing a Scott promotional pin at the council meeting, Scott informed the supporter that the pin could not be displayed. Likewise, Cleveland was asked to remove his promotional message when the fact that he was displaying such a message came to Scott's attention. The difference in the way Cleveland was treated was the result of Cleveland's indignant and argumentative reaction to Scott' request. In contrast, the Scott-supporter was apologetic and promptly complied with Scott's instruction. Any other distinction appears to be due to the fact that Scott's comments were not written statements thoughtfully drafted in advance, but rather were her off-the-cuff attempts to enforce a general rule which she believed existed.

It was reasonable for the City to establish a campaign-free zone for the purposes of limiting political influence on its employees and conducting orderly and efficient meetings. As stated in Rowe: "[t]here is a significant governmental interest in conducting orderly, efficient meetings of public bodies." Rowe, 358

F.3d at 803 (citing Jones, 888 F.2d at 1332). The forum was not open for the purpose of campaigning. "As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand." Id.

Cleveland argues that the rule was overly broad because it banned expression by those in the audience who would not be seen on the television broadcast. However, in order to limit political influence on the city's employees and maintain orderly and efficient meetings, the City has the right maintain the decorum of the entire assembly, not just of those at the podium or in front of the television camera.

Cleveland also asserts that it was unreasonable to disallow the slogan on his T-shirt, while allowing oral comments such as he made during the public comment portion of the meeting. According to Cleveland, his T-shirt slogan was consistent with the purpose of the meeting because he later was allowed to speak orally on the subject during the public comment portion of the meeting. Cleveland even argues that Scott herself engaged in political speech in support of her re-election by wearing red, the color scheme used in her campaign advertisements. Cleveland's position infers that Scott should have stopped him from speaking at the podium, and that because he was allowed to speak on the subject, the forum lost its limited

9

nature. However, it was not apparent that Cleveland was going to comment on the mayoral election until his comments were made. And, in fact, the comments made at the podium were not straightforward statements about the mayoral election, but were rather jabs at the City's so-called "dress code." The only comment that could be characterized as having to do with the election itself was plaintiff's oblique statement about the mayor perhaps having more time to attend ball games after the date of the election. The City Commission meetings serve the purpose of conducting the city business and are not for the purpose of providing a venue to express political election views. The fact that Cleveland made such statements does not change the nature of the forum. In addition, the fact that speech was not restricted to the extent constitutionally permissible does not make the lesser restriction unreasonable. The prohibition of the display of campaign materials during the meeting was reasonable given the limited forum in which it was applied and because it was narrowly tailored to serve a legitimate government interest. As such, we uphold the district court's finding of no constitutional violation.

Accordingly, because Plaintiff's claim does not establish a constitutional violation, there is no need to reach the other bases[3] on which the district court

---

[3]The district court also found that the actions by Scott and Eckstine at the council meeting did not represent a policy or custom of the City and therefore did not create liability under § 1983; that the individual defendants were entitled to qualified immunity; and that there was no basis for punitive damages.

granted summary judgment in favor of the defendants.

## IV. CONCLUSION

In light of the foregoing analysis, we affirm the district court's order granting summary judgment in favor of all defendants.

**AFFIRMED.**