[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10115
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-03284-TCB

NATHANIEL BORRELL DYER,

Plaintiff - Appellant,

versus

ATLANTA INDEPENDENT SCHOOL SYSTEM,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 22, 2021)

Before MARTIN, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Nathaniel Dyer, *pro se*, appeals the district court's order granting summary

judgment in favor of Atlanta Independent School System ("AISS").  Dyer filed this

action against AISS asserting claims under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as well as three state-law tort claims. After dismissing the tort claims, the district court granted summary judgment in favor of AISS on Dyer's § 1983 claims. Finding no violations of his constitutional rights, we affirm.

## I.    FACTUAL AND PROCEDURAL HISTORY

Since 2006, Dyer, a graphic designer by trade, worked directly with schools in the Atlanta area and also operated independent youth organizations, which provided services to children in the Atlanta area. His working relationship with the Atlanta school system, however, soured sometime in 2007 when he allegedly witnessed administrators at one middle school engaging in "unethical and unprofessional manner which violated federal laws." Dyer took his concerns directly to AISS.

AISS holds various types of monthly meetings, including "community meetings." The community meetings are open to the public where, at reserved times, members of the community can offer "input . . . regarding policy issues, the educational program, or any other aspect of AISS business except confidential personnel issues." If a member of the community wishes to speak during the public-comment portion, he or she must register in person prior to the meeting, and the chairperson must recognize the person before he or she may speak. To maintain proper decorum and avoid disruptive meetings, AISS established several policies

2

with which members of the public in attendance are expected to comply.  For example, AISS board policy BC-R(1) prohibits those in attendance from applauding, cheering, jeering, or engaging in speech that "defames individuals or stymies or blocks meeting progress."  Such conduct may even be "cause for removal from the meeting or for the board to suspend or adjourn the meeting."

Sometime in 2009, Dyer's relationship with AISS devolved from vocal criticism to ugly opposition.  For instance, outside of one of the community meetings, he distributed a flyer depicting the former superintendent of AISS in a Ku Klux Klan robe.  In his own words, this flyer was meant to be a way of engaging in "psychological warfare."  Doubling-down on that effort, he created other flyers depicting AISS board members as flying monkeys and clowns.  The timeline is not particularly clear, but these actions began years—up to a decade—of heated, over-the-top rhetoric from Dyer directed towards the AISS board members.

The situation reached a tipping point when Dyer directed racially-charged, derogatory epithets like the "N-word," "coons," and "buffoons" toward the board at the January 2016 community meeting.  This episode marked the beginning of Dyer receiving multiple suspensions from speaking at, and later attending, the AISS community meetings.  In a January 15, 2016, letter, AISS suspended Dyer from speaking at meetings for six months.  Nonetheless, he attended the February 2016 community meeting, where he was not permitted to speak and was escorted to his

seat by police.  After this first suspension ended in July 2016, AISS again suspended Dyer in October 2016, this time for over a year, for "inappropriate and disruptive behavior" at the October 2016 meeting.  AISS warned him that similar conduct in the future would result in a permanent suspension of his speaking privileges at community meetings.  Dyer's third suspension came in February 2018 after AISS claimed he again used racial slurs at a prior meeting.  Under the terms of this last suspension, Dyer could not enter AISS property or communicate with any AISS employee for a year.  He contends that he was not told how to, or even if he could, contest any of the suspensions.

Dyer filed a five-count complaint in state court in Fulton County, Georgia, alleging violations of the First Amendment and due process under the Fourteenth Amendment under 42 U.S.C. § 1983, as well as three state-law claims of slander, discrimination and retaliation, and harassment.  He sought declaratory relief, an injunction prohibiting AISS from enforcing its no-trespass warning, $10,000,000 in damages, and a public apology.  AISS removed the action to federal court and then moved to dismiss the complaint for failure to state a claim, raising several arguments not relevant to this appeal.  The district court agreed in part, determining that Dyer's claims predating June 4, 2016, were barred by the two-year statute of limitations and that his state law claims were barred by sovereign immunity.

AISS then moved for summary judgment on Dyer's constitutional claims.  In its view, the community meetings AISS holds are "limited public forums" because participation was limited to registered speakers and topics relating to the school system.  Although conceding Dyer's offensive speech was "protected" under the First Amendment, AISS argued there was no genuine dispute that, as a matter of law, its suspending Dyer from attending community meetings was lawful because that offensive speech was disruptive and violated its policies on proper decorum.  In other words, AISS insisted that it removed Dyer from its community meetings "not because it disagreed with Dyer's message, but because it regarded his use of racially-insensitive language to be . . . *disruptive* to the meeting."  (emphasis added).  As for Dyer's due process claim, AISS argued that the claim failed because it was duplicative of the First Amendment claim.

In support of its motion, AISS submitted a declaration from its deputy superintendent.  Among many other things, the deputy superintendent stated that, at the October 16 community meeting, Dyer refused to leave the speakers' podium when instructed to do so.  Following Dyer's refusal, police officers escorted Dyer from the meeting, and Dyer continued to shout and curse outside of the meeting room.  AISS also submitted the three suspension letters: one from January 15, 2016, one from October 11, 2016, and one from February 6, 2018.  In the January 15 letter, AISS told Dyer that he was suspended because his use of racial slurs was "outside

5

the bounds [of] decorum," "offensive," and "failed to advance any meaningful discourse." In the October 11 letter, AISS stated that Dyer's use of the word "sambos" was "completely outside the bounds of civility," "offensive," and "failed to advance any meaningful discourse." AISS informed Dyer that he was suspended from participating in meetings or entering AISS property until December 31, 2017. AISS also told Dyer that, if he entered school property, he would be arrested for trespassing and warned him of additional consequences if his conduct continued, including permanent suspension of his privilege to speak during meetings. In the February 6 letter, AISS again suspended Dyer from meetings and prohibited him from entering school property because of his "inappropriate and disruptive behavior." The suspension and trespass warning were for the remainder of the term of the letter's author, and the letter again told Dyer that, if he entered school property, he would be arrested. It stated that his flyers were offensive and "failed to advance any meaningful discourse."

On December 5, 2019, the district court granted AISS's motion for summary judgment on both remaining constitutional claims. For the First Amendment claim, the district court found that AISS's restrictions on Dyer were content-neutral, as AISS "cut off Dyer's speech because he expressed himself in a hostile manner that disrupted meeting progress." The district court also found the restrictions were narrowly-tailored to advance a substantial government interest, as AISS had a

substantial government interest in "preserving meeting decorum" and the suspensions were necessary because Dyer continued to disrupt meetings when he was on school property, regardless of whether he was able to speak or enter the meeting room.  As to the Fourteenth Amendment claim, the district court found that, although Dyer had a protected liberty interest in attending the AISS community meetings, AISS had no requirement to provide him a *pre*-deprivation remedy because he had an adequate *post*-deprivation remedy in the Georgia Open Meetings Act ("GOMA").  *See* Ga. Code Ann. § 50-14-1.  Therefore, the district court found that there was no procedural due process violation.  Dyer timely filed his notice of appeal.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's order granting summary judgment. *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact."  *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011).  We view all evidence and all reasonable inferences drawn therefrom in "a light most favorable to the non-moving party."  *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1325–26 (11th

Cir. 2005) (quoting *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998)).

## III.    ANALYSIS

On appeal, Dyer argues that the district court erred in granting summary judgment in favor of AISS on his First Amendment and Fourteenth Amendment claims brought under 42 U.S.C. § 1983.[1]  We find Dyer's arguments without merit.

### A.    The First Amendment Claim

Dyer argues that the district court erred as a matter of law when it found that AISS had not violated his right to free speech under the First Amendment. Specifically, he contends that AISS placed restrictions on his speech that were neither content-neutral nor narrowly tailored.  He also argues that the speech and

---

[1] Dyer further asserts that the district court erred by not finding that AISS had "altered and falsified evidence in violation of Georgia Code § 16-10-20.1 and ABA Model Rule of Professional Conduct Rule 3.3.(a)(3)."  Specifically, Dyer contends that there is a dispute between the February 6 letter and a different letter dated February 8.  It appears that Dyer presumed that the February 6 letter shown to him at his deposition was actually the February 8 letter and AISS deliberately misled him.  He then argued to the district court, and only passingly here on appeal, that AISS "falsified" this evidence.

While we construe *pro se* briefs liberally, *Harris v. United Auto. Ins. Grp., Inc.*, 579 F.3d 1227, 1231 n.2 (11th Cir. 2009), *pro se* parties are still required to follow the rules of court, *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).  "A party fails to adequately 'brief' a claim when he does not 'plainly and prominently' raise it." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) (quoting *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013)). This occurs when the party only casually raises an issue, makes passing reference to the claim, or fails to elaborate the argument in the brief's argument section.  *Id.*; *see also* Fed. R. App. P. 28(a)(8)(A) (explaining that a brief must contain an "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Beyond a conclusory assertion, Dyer fails to adequately explain—and cite to legal authority demonstrating—how AISS falsified evidence and how that alleged falsification constituted violations of section 16-10-20.1 and rule 3.3(A)(3).  We therefore deem this argument abandoned.

conduct that AISS complained of were "satire" and protected under the First Amendment. As an initial matter, we will address only Dyer's first claim—whether AISS's restrictions were content-neutral. We offer no comment on the issues of narrow-tailoring or satire because Dyer has failed to brief the issue adequately or failed to raise it below to the district court. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) (noting that "[a] party fails to adequately 'brief' a claim when he does not 'plainly and prominently' raise it."); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (explaining that an issue raised for the first time in an appeal will not be considered by this court).

Although the First Amendment protects individuals' freedom of speech, there are certain limitations to that right. *See Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989). Indeed, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). For instance, it is "well settled that the government need not permit all forms of speech on property that it owns and controls." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992).

Because Dyer's claim is based on private speech on government property, we apply the three-step analysis established by the Supreme Court in *Cornelius v. NAACP Legal Defense & Education Fund, Inc.*, 473 U.S. 788 (1985). First, because

not all speech is protected, we must determine if Dyer engaged in speech protected by the First Amendment. *Id.* at 797. Second, if that speech was protected, "we must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Id.* Finally, we must determine whether AISS suspending Dyer from its public meetings satisfied "the requisite standard" that is applied to the forum identified in step two. *Id.* The first and second steps are uncontested. AISS concedes Dyer's speech was protected by the First Amendment, and we agree. *See Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) ("Speech may not be banned on the ground that it expresses ideas that offend."); *Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). We also agree with the parties' other concession—that an AISS community meeting is a "limited public forum." *See Cambridge Christian Sch. Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1237 (11th Cir. 2019) ("[W]e have identified the public-comment portions of school board meetings, among other things, as limited public forums.").

We next turn to the proper standard against which AISS's restrictions must be assessed. "The government may restrict access to limited public fora by content-neutral conditions for the time, place, and manner of access, all of which must be

10

narrowly tailored to serve a significant government interest." *Crowder v. Hous. Auth. of Atlanta*, 990 F.2d 586, 591 (11th Cir. 1993)). "[A] content-neutral ordinance is one that 'places no restrictions on . . . either a particular viewpoint or any subject matter that may be discussed.'" *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1259 (11th Cir. 2005) (second alteration in original) (quoting *Hill v. Colorado*, 530 U.S. 703, 723 (2000)).

Here, the AISS board policies outlining how someone may speak at a community meeting, prohibiting disruption, and requiring decorum are content-neutral policies. We agree with the district court's determination that AISS did not regulate Dyer's speech based on its content, i.e., because it was offensive. Rather, AISS regulated Dyer's offensive speech because it was disruptive. The letters sent by AISS explained that his suspensions were the result of his conduct "fail[ing] to advance any meaningful discourse." The fact that AISS also told Dyer that his comments were "abusive, abhorrent, [and] hate-filled" was merely support for the suspensions for disruptive and unruly behavior; the offensiveness of the comments themselves was not the basis for his suspension. We have made this distinction before, and we believe it is a meaningful one. *See, e.g., Jones*, 888 F.2d at 1332 ("The district court found that Jones had complied with the time, place and manner restrictions imposed on the meeting and was silenced because of the content of his speech. We disagree. In our opinion, the mayor's actions resulted not from

11

disapproval of Jones' message but from Jones' disruptive conduct and failure to adhere to the agenda item under discussion.").

Moreover, AISS's actions seem justified as, by Dyer's own admission, his aggressive and offensive choice of words were calculated to "send a message" and engage in "psychological warfare." Removing Dyer for his disruptive behavior and lack of proper decorum at an AISS community meeting was content-neutral and, thus, permissible. The district court therefore did not err in granting AISS summary judgment as to the First Amendment claim.

## B.    The Fourteenth Amendment Claim

Regarding his Fourteenth Amendment claim, Dyer argues the district court erred as a matter of law when it found he had an adequate post-deprivation remedy in the form of the GOMA. We disagree.

The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The most basic tenets of procedural due process are notice and an opportunity to be heard. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950). To state a claim for such a violation, a plaintiff must show three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d

1336, 1347 (11th Cir. 2006) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).  It is undisputed that AISS's actions constitute state action.

As for the protected liberty or property interest, the district court noted that Dyer does not expressly argue or identify any such interest.  But, again, liberally construing this *pro se* appeal, we interpret his claim as alleging a deprivation of a liberty interest in attending public school board meetings.  We, however, have never recognized such a liberty interest.  Although the district court held that such an interest is protected, relying on, *Cyr v. Addison Rutland Supervisory Union*, 955 F. Supp. 2d 290, 295–96 (D. Vt. 2013), we need not reach this issue today because Dyer's due process claim fails on the third element—there was an adequate post-deprivation remedy available.

Dyer argues that "some kind of a hearing" is required "*before* the State deprives a person of liberty or property."  *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  But this is not necessarily true all of the time.  The Supreme Court has recognized that a pre-deprivation process may be "impracticable" in some cases, as a public body cannot always know when a deprivation will occur.  *Hudson v. Palmer,* 468 U.S. 517, 534 (1984).  If a pre-deprivation hearing is impracticable, we must determine whether the plaintiff had an "adequate post-deprivation remedy" for the alleged violation.  *Id.* at 534; *see also Goss v. Lopez*, 419 U.S. 565, 582 (1975) (holding that post-deprivation remedies may be constitutionally adequate in

13

situations where prior notice and hearing cannot be provided, including situations where there is a continuing danger to persons or property or an ongoing threat of disruption).

AISS argues that a pre-deprivation hearing would not have been possible here because it could not have anticipated how or when Dyer would disrupt its community meetings. We agree. Here, similar to the situation in *Goss*, pre-deprivation remedies were not practicable as AISS could not have predicted when and how Dyer would act at the community meetings and because Dyer posed an ongoing threat of disruption. Moreover, Dyer had an adequate post-deprivation remedy in state law under GOMA, which authorizes an individual to file a civil suit when he or she is affected by a violation of the statute, including the requirement that government meetings be open to the public. *See* Ga. Code Ann. § 50-14-1. Through GOMA, Dyer could seek an injunction or other equitable relief to challenge his trespass notice. *See id.*; *see also McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (holding that an adequate state remedy providing for a post-deprivation process is sufficient to cure a procedural deprivation). Because a pre-deprivation remedy was impracticable in this situation and because GOMA provides an adequate post-deprivation remedy, Dyer's Fourteenth Amendment claim fails.

## IV.    CONCLUSION

For the reasons discussed, we affirm the district court's order granting summary judgment in favor of AISS.

**AFFIRMED.**